**Barry Dane ALEXANDER, Sr.,
Plaintiff/Appellant,**

v.

**Gordon Everett INMAN,
Defendant/Appellant.**

Court of Appeals of Tennessee,
Middle Section, at Franklin.

Sept. 4, 1991.

Application for Permission to Appeal
Denied by Supreme Court
Feb. 18, 1992.

William Carter Conway, Ernest W. Williams, Alexander, Conway & Williams, Franklin, for plaintiff/appellant.

Edward P. Silva, R.E. Lee Davies, Hartzog, Silva & Davies, Franklin, for defendant/appellant.

## OPINION

KOCH, Judge.

This appeal involves a husband's efforts to extract judicial retribution from his former wife's lover. After obtaining an uncontested irreconcilable differences divorce, the husband sued his former wife's lover in the Circuit Court for Williamson County for outrageous conduct, alienation of affections, and criminal conversation. The trial court dismissed the outrageous conduct and criminal conversation claims. Both parties filed Tenn.R.App.P. 9 applications which were granted by this court. We have determined that the trial court properly dismissed the outrageous conduct and criminal conversation claims and that it should likewise dismiss the alienation of affections claim.

### I.

Gordon Inman and Julia Ann Inman separated in April, 1987 after twenty-seven years of marriage. Several months later, Mr. Inman became romantically involved with Deborah Shaun Alexander who at the time was married to Barry Dane Alexander. The Alexanders' marriage was also foundering at that time, due in part to Mr. Alexander's admissions during marriage counseling sessions that he "had a few flings" during the marriage.[1]

Mrs. Inman was apparently unaware of Mr. Inman's affair with Mrs. Alexander when she filed for divorce in September,

---

1. In fact, Mr. Alexander later admitted to having sexual contact with four different women between 1977 and 1984, one of whom was Mrs. Alexander's sister.

1987. After an unsuccessful attempt at reconciliation, the Inmans' divorce case proceeded slowly because of the size and complexity of their marital estate and, as later revealed, Mr. Inman's failure to be truthful and candid during the discovery process. Mr. Inman had perjured himself about his extramarital affairs.

Mr. Alexander began to become suspicious about his wife's activities, particularly her out-of-town trips, and hired a private investigator to keep her under surveillance. The Alexanders separated in August, 1988 after the private investigator confirmed a tryst between Mr. Inman and Mrs. Alexander in a hotel in Dallas. Mr. Alexander filed for divorce shortly thereafter.

During an October 5, 1988 hearing in the Alexanders' divorce case, Mrs. Alexander discovered that Mr. Alexander had retained a private investigator who had confirmed her affair with Mr. Inman. Mrs. Alexander telephoned Mr. Inman during a break in the proceedings to tell him that "the cat was out of the bag." Mr. Inman thereafter admitted his affair with Mrs. Alexander, and Mrs. Inman amended her divorce complaint to add an adultery count.

The Inmans were divorced in December, 1988.[2] The Alexanders later entered into a marital dissolution agreement, and on August 18, 1989, Mr. Alexander received a divorce on the grounds of irreconcilable differences.

Three months later, Mr. Alexander sued Mr. Inman for outrageous conduct, alienation of affections, and criminal conversation. On April 26, 1990, the trial court dismissed Mr. Alexander's outrageous conduct claim but declined to dismiss his alienation of affections and criminal conversation claims. Later, on July 9, 1990, the trial court granted Mr. Inman's motion for partial summary judgment and dismissed Mr. Alexander's criminal conversation claim. Mr. Alexander has perfected an interlocutory appeal from the dismissal of his outrageous conduct claim,[3] and Mr. Inman has perfected an interlocutory appeal from the trial court's denial of his motion to dismiss Mr. Alexander's alienation of affections claim.

## II.

■ We turn first to the trial court's dismissal of Mr. Alexander's claim for outrageous conduct. Mr. Inman's motion to dismiss admits the truth of the averments in Mr. Alexander's complaint but asserts that they do not state a cause of action. *Owens v. Foote,* 773 S.W.2d 911, 913 (Tenn. 1989); *Humphries v. West End Terrace, Inc.,* 795 S.W.2d 128, 130 (Tenn.Ct.App. 1990). Thus, we construe the complaint liberally and will sustain its dismissal only if it appears that Mr. Alexander will be able to prove no set of facts to support his claim. *Pemberton v. American Distilled Spirits Co.,* 664 S.W.2d 690, 691 (Tenn. 1984); *Bellar v. Baptist Hosp., Inc.,* 559 S.W.2d 788, 790 (Tenn.1978).

■ The Tennessee Supreme Court first recognized the tort of outrageous conduct in *Medlin v. Allied Inv. Co.,* 217 Tenn. 469, 478–79, 398 S.W.2d 270, 274 (1966). Liability exists only where the defendant's conduct has been so outrageous in character and so extreme in degree as to be beyond the pale of decency. The conduct must also cause serious mental injury. *Swallows v. Western Elec. Co.,* 543 S.W.2d 581, 582 (Tenn.1976).

Establishing a test or legal standard for determining whether particular unseemly conduct is so intolerable as to be tortious

---

**2.** The trial court granted Mr. Inman the divorce despite his admitted perjury. This court reversed and granted the divorce to Mrs. Inman, *Inman v. Inman,* App. No. 89–82–11, 1989 WL 122984 (Tenn.Ct.App. Oct. 18, 1989), and the Tennessee Supreme Court granted Mr. Inman's application for permission to appeal. While the Supreme Court reversed this court's decision with regard to alimony and attorney's fees, it let stand the portion of the decision awarding the divorce to Mrs. Inman. *Inman v. Inman,* 811 S.W.2d 870 (Tenn.1991).

**3.** Mr. Alexander has not taken issue on this appeal with the summary dismissal of his criminal conversation claim. Indeed, it would have been useless to do so since the tort of criminal conversation no longer exists in Tennessee. *See* Act of April 12, 1990, ch. 1056, 1990 Tenn.Pub. Acts 773; *Hanover v. Ruch,* 809 S.W.2d 893, 898 (Tenn.1991).

has proved to be difficult. *Byran v. Campbell*, 720 S.W.2d 62, 64 (Tenn.Ct.App. 1986). However, the test often used by our courts is the one found in Restatement (Second) of Torts § 46 comment d (1964) which states, in part:

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Mr. Alexander's outrageous conduct claim is based on Mr. Inman's adulterous affair with Mrs. Alexander and on Mr. Inman's perjury concerning these activities in his own divorce proceedings. Mr. Inman's conduct on both scores is entirely inappropriate and unacceptable. However, in these days and times, an average member of the community would not find it to be so atrocious that it goes beyond the bounds of decency.

The courts have the responsibility to determine, in the first instance, whether the defendant's conduct is so extreme and outrageous as to permit recovery. *Medlin v. Allied Inv. Co.*, 217 Tenn. at 481, 398 S.W.2d at 275. Like the trial court, we find that the portion of Mr. Alexander's complaint seeking to recover for outrageous conduct fails to state a claim upon which relief can be granted.

## III.

We turn next to the trial court's denial of Mr. Inman's motion to dismiss Mr. Alexander's alienation of affections claim. The trial court, relying on Tenn. Code Ann. § 1–3–101 (1985),[4] declined to dismiss this claim, reasoning that the statute repealing the common law action for alienation of affections, Tenn.Code Ann. § 36–3–701 (Supp.1990), did not affect claims that had accrued before the act's effective date.[5]

We have substantial doubt concerning the application of Tenn.Code Ann. § 1–3–101 to this case since the repealing statute dealt with a common law rather than a statutory claim. However, we need not reach this issue because the Tennessee Supreme Court has since retroactively abolished the common law tort of alienation of affections. *Dupuis v. Hand*, 814 S.W.2d 340, 346 (Tenn.1991). As a result of the Supreme Court's action, a claim for alienation of affections no longer exists in Tennessee. Accordingly, the portion of Mr. Alexander's complaint seeking to recover for alienation of affections fails to state a claim upon which relief can be granted.

## IV.

We affirm the dismissal of Mr. Alexander's claim for outrageous conduct and remand the case to the trial court with directions to dismiss the remaining portions of Mr. Alexander's complaint. We also tax the costs of this appeal to Barry Dane Alexander, Sr. and his surety for which execution, if necessary, may issue.

LEWIS and CANTRELL, JJ., concur.

---

4. Tenn.Code Ann. § 1–3–101 provides: "The repeal of a statute does not affect any right which accrued, any duty imposed, any penalty incurred, nor any proceeding commenced, under or by virtue of the statute repealed."

5. Tenn.Code Ann. § 36–3–701 became effective on July 1, 1989. *See* Act of May 25, 1989, ch. 517, § 3, 1989 Tenn.Pub.Acts 902. While Mr. Alexander's complaint was filed after the act's effective date, the conduct giving rise to his claim occurred before the act was passed.