GILBERT C. QUINN & another[1] *vs.* JOSEPH WALSH.

No. 98-P-1019.

Plymouth. February 16, 2000. - July 14, 2000.

Present: ARMSTRONG, C.J., DREBEN, & DUFFLY, JJ.

*Limitations, Statute of. Emotional Distress. Alienation of Affections. Criminal Conversation. Intentional Conduct.*

A complaint alleging intentional infliction of emotional distress stated the minimally necessary facts to withstand a motion to dismiss based on the statute of limitations. [697-700]

Discussion of the amatory, or "heart balm," torts of alienation of affection and criminal conversation. [701-703]

A claim seeking damages for intentional infliction of emotional distress, arising out of the defendant's engaging in an extramarital affair with the plaintiff's then spouse that resulted in their divorce, stated a claim for alienation of affection or criminal conversation, which were abolished by G. L. c. 207, § 47B, and the complaint thus failed to state a claim upon which relief could be granted. [703-705]

Discussion of the tort of intentional infliction of emotional distress. [705-706]

A claim brought on behalf of a child for intentional infliction of emotional distress, arising out of the defendant's engaging in an extramarital affair with the plaintiff's then married mother that resulted in the divorce of the plaintiff's parents, did not allege conduct that was "outrageous"; the claim thus failed to state a claim on which relief could be granted. [707-709]

CIVIL ACTION commenced in the Superior Court Department on September 11, 1997.

A motion to dismiss was heard by *Suzanne DelVecchio*, J.

*Paul P. Perocchi* (*Elissa L. McMillen* with him) for the plaintiffs.

*William C. McPhee* for the defendant.

DUFFLY, J. Does a complaint alleging that a defendant engaged in an extramarital affair in order to injure a plaintiff spouse

[1]Michael Quinn, his son.

survive the statutory abolition[2] of the common-law torts of alienation of affection and criminal conversation? Concluding that such a complaint stated no case, a judge of the Superior Court dismissed it. The spouse, Gilbert C. Quinn (Quinn), and son (Michael) appeal the dismissal.

These are the allegations in the complaint. Quinn and Susan Bloomstein were married on July 17, 1977. Their only child, Michael, was born on March 30, 1982. In January, 1994, and continuing thereafter for a period of time not specified in the complaint, Susan Bloomstein-Quinn engaged in an extramarital affair with Joseph Walsh. Walsh knew that Bloomstein-Quinn was married and engaged in the affair openly and in a manner such that it became known to the plaintiffs and to the community at large. The purpose of the affair was, "in part," to injure Quinn.[3] By November, 1994, Walsh's conduct had caused Quinn's marriage of nearly twenty years to end, and he filed for divorce. The plaintiffs suffered severe emotional distress and Walsh knew or should have known that his conduct would result in such emotional distress.

The two-count complaint was filed on September 11, 1997. Walsh filed a motion to dismiss the plaintiffs' complaint on the grounds that it failed to state a claim upon which relief could be granted and that the claims were barred by the applicable statute of limitations. The motion to dismiss was allowed after hearing.

1. *Statute of limitations.* The motion judge concluded that the plaintiffs' complaint was barred by the three-year statute of limitations applicable to tort claims. "A three-year limitation period applies to [a] plaintiff's claims in tort for intentional infliction of emotional distress." *Mellinger* v. *West Springfield,* 401 Mass. 188, 191 (1987). In order that the complaint not be time-barred, the plaintiffs' injury must have occurred after September 11, 1994. Here, the allegedly injurious conduct consisted of the affair and its publication to "the plaintiffs and to the community at large," which resulted in their suffering "severe emotional distress."

The time when a cause of action accrues has not been defined by statute but has been the subject of judicial interpretation. See *Riley* v. *Presnell,* 409 Mass. 239, 243 (1991). The general rule

---

[2]G.L. c. 207, § 47B, inserted by St. 1985, c. 74, § 1.

[3]With respect to Michael, the complaint does not specifically allege that the conduct was intended to injure him but only that "[Walsh's] conduct was intended and, in fact, became known to Michael."

is that a cause of action in tort accrues at the time the plaintiff is injured. *Ibid.* See *Joseph A. Fortin Constr., Inc.* v. *Massachusetts Hous. Fin. Agency*, 392 Mass. 440, 442 (1984); *Frank Cooke, Inc.* v. *Hurwitz*, 10 Mass. App. Ct. 99, 109 (1980). We have said that, where the claim arises from the intentional infliction of emotional distress, the injury occurs on the date a plaintiff first experiences anxiety or distress that is the intended result of the defendant's conduct. *Pagliuca* v. *Boston*, 35 Mass. App. Ct. 820, 824 (1994). We have narrowed this rule to provide that, "[w]hen an injury . . . becomes manifest, the statute of limitations does not stay in suspense until the full extent, gravity, or permanence of that same injury or consequential disease is known." *Id.* at 824-825, quoting from *Gore* v. *Daniel O'Connell's Sons, Inc.*, 17 Mass. App. Ct. 645, 649 (1984).

In cases where the emotional injury is said to have been caused by a defendant's negligence, our courts have imposed the even narrower requirement that "[a] plaintiff's emotional distress must follow 'closely on the heels of' the negligent act." *Miles* v. *Edward O. Tabor, M.D., Inc.*, 387 Mass. 783, 789 (1982), quoting from *Ferriter* v. *Daniel O'Connell's Sons, Inc.*, 381 Mass. 507, 518 (1980). We see no reason to apply a different rule to the claim made here. This is because we recognize the need to impose limits on the scope of liability with respect to claims involving emotional injuries, whether negligently or intentionally caused.[4] See, e.g., *Migliori* v. *Airborne Freight Corp.*, 426 Mass. 629, 631-633 (1998) ("[w]here the mechanism by which injury comes about includes the psychological, both the class of plaintiffs and kinds of claims are greatly and predictably expanded. . . . We have imposed relational, temporal, and spatial limits on the scope of liability for emotional harm . . . [which are] grounded in [the] practical need to draw a determinate line against excessive liability. . . . [W]e must acknowledge that these requirements of proximity are based more on the pragmatic need to limit the scope of potential li-

---

[4]An additional limitation was suggested in *Nancy P.* v. *D'Amato*, 401 Mass. 516, 522 (1988). There the court concluded that a mother who learned that her daughter had been molested several months earlier could not recover on her claim for intentional infliction of emotional distress. The court went on to state that, "[e]ven if the family member's presence were not a condition of liability [for intentional infliction of emotional distress], we would normally require both (a) substantially contemporaneous knowledge of the outrageous conduct and (b) a severe emotional response."

ability, than on grounds of fairness or other imperatives of corrective justice").

We therefore conclude that, unless the circumstances are such that the resulting damage is "inherently unknowable," *Friedman* v. *Jablonski*, 371 Mass. 482, 485 (1976), and the statute of limitations is therefore tolled until "a plaintiff discovers, or reasonably should have discovered, that she has been harmed," *Phinney* v. *Morgan*, 39 Mass. App. Ct. 202, 204 (1995),[5] the manifestation of intentionally inflicted emotional injury must be substantially contemporaneous with the outrageous conduct. Thus, to survive dismissal based on the claim that the action was time-barred, the inferences to be drawn from the allegations in the complaint must encompass both the requirement that the plaintiffs suffered emotional distress soon after learning of the alleged outrageous conduct and that their distress was manifested after September 11, 1994.

Under Mass.R.Civ.P. 12(b)(6), 365 Mass. 754 (1974), "the allegations of [a] complaint, as well as such inferences as may be drawn therefrom in the plaintiff's favor are to be taken as true." *Nader* v. *Citron*, 372 Mass. 96, 98 (1977). "There is no requirement that the plaintiff's complaint . . . state the relevant facts with completeness or precision." *Ahern* v. *Warner*, 16 Mass. App. Ct. 223, 226 n.2 (1983). Our analysis must be based upon an indulgent reading of the complaint, *Haggerty* v. *Globe Newspaper Co.*, 383 Mass. 406, 409 (1981), including indulgence for the period of limitations. *Friedman* v. *Jablonski*, 371 Mass. at 487-488. Although the plaintiffs did not specifically al-

---

[5]We have recognized limited circumstances in which the discovery rule applies. See, e.g., *Phinney* v. *Morgan*, 39 Mass. App. Ct. at 203-204 (applying discovery rule to claim of negligent and intentional infliction of emotional distress arising out of incestuous child abuse); *Riley* v. *Presnell*, 409 Mass. at 246 (action arising out of emotional distress claim against psychotherapist alleged to have induced plaintiff, his patient, to engage in various sexual acts; this was injury which "by its very nature prevents discovery of its cause"). See also *Hendrickson* v. *Sears*, 365 Mass. 83 (1974) (attorney malpractice); *Friedman* v. *Jablonski*, 371 Mass. at 485 (deceit in sale of real estate); *Franklin* v. *Albert*, 381 Mass. 611, 619 (1980) (medical malpractice); *Mohr* v. *Commonwealth*, 421 Mass. 147, 155-156 (1995) (wrongful adoption); *Lijoi* v. *Massachusetts Bay Transp. Authy.*, 28 Mass. App. Ct. 926 (1990) (loss of spousal and parental consortium following a physical injury). The plaintiffs in the within action allege that the defendant's conduct was intended to be known to the plaintiffs and that it did in fact become known to them. Thus, principles supporting a discovery rule are inapplicable here.

lege when they became aware of the relationship between Bloomstein-Quinn and Walsh, nor when they began to suffer as a result of Walsh's conduct in advertising the affair, the plaintiffs did allege that the affair commenced in January, 1994, and was conducted "openly and in a manner such that the relationship became known to Quinn and friends of Quinn . . . as well as becoming known in the community where he lived." It is the plaintiffs' contention that, because it is not possible to conclude from the face of the complaint precisely when the plaintiffs were injured, the motion judge erred in concluding that their injury was discovered some time before September 11, 1994.

We agree that it is possible to infer from their allegations that the plaintiffs did not learn of the affair until after September 11, 1994, either because the "ongoing" affair continued throughout the summer or, if it ended soon after it began, that this did not become immediately known to the plaintiffs. On this basis we conclude that the plaintiffs have adequately, if barely, pleaded the minimally necessary facts to survive the bar of the statute of limitations.[6]

2. *Failure to state a claim upon which relief may be granted.* Walsh also sought to dismiss the plaintiffs' complaint on the ground that it failed to state a claim upon which relief could be granted. Mass.R.Civ.P. 12(b)(6). The issue before us is one of first impression: Does an adulterous affair that was openly conducted and initiated "in part" to injure a plaintiff[7] preclude at this stage a ruling as matter of law that there is "no set of facts in support of [the plaintiffs'] claim[s] which would entitle [them] to relief?" *Nader* v. *Citron,* 372 Mass. at 98. The motion judge concluded that the plaintiffs' complaint was essentially a claim for alienation of affection or criminal conversation, forms of action which have been abolished by statute in Massachusetts,[8] and for this reason dismissed the complaint. We agree with the motion judge that, with respect to Quinn, the

---

[6]Having concluded that the plaintiffs' claim is not barred by the statute of limitations, we need not address Michael's argument that, as to him, the claim is tolled by virtue of his minority.

[7]We note the claim that Walsh engaged in the affair in order to cause harm is specifically made only with respect to Quinn, see note 3, *supra.* The plaintiffs allege that "Walsh knew, or reasonably should have known, that his outrageous conduct would result in" Michael's distress. As we discuss, *infra,* the claims thus stated are legally indistinguishable.

[8]"Alienation of affection and criminal conversation shall not constitute an injury or wrong recognized by law, and no action, suit or proceeding shall be

complaint should therefore be dismissed. On a different basis, we conclude that Michael's claim should also be dismissed. A discussion of the evolution of the "heart balm"[9] torts necessarily precedes our analysis, to be followed by a discussion of the tort of intentional infliction of emotional distress, the stated basis of the plaintiffs' action.

(a) *Alienation of affection and criminal conversation.* The common-law torts of alienation of affection and criminal conversation compensated a spouse[10] for intentional interference with the marital relationship by a third party.[11] These actions are similar in that both "compensate[] the plaintiff for impairment of consortium," Clark, Law of Domestic Relations § 12.3, at 662 (2d ed. 1987), and both are "intentional" torts, Nolan & Sartorio, Tort Law §§ 152, 153, at 261-265 (1989); *Nolin* v. *Pearson,* 191 Mass. 283, 289 (1906), but they may be distinguished.

To recover for criminal conversation[12] there had to be proof "that the defendant had adulterous relations with the plaintiff's spouse." Clark, Law of Domestic Relations § 12.3, at 662. See Restatement (Second) of Torts § 685 (1977). The tort involved adultery with one spouse "whether with or against her will." *Bigaouette* v. *Paulet* 134 Mass. 123, 126 (1883). Loss of consortium was the only necessary component of damage, but

---

maintained therefor." G.L. c. 207, § 47B, inserted by St. 1985, c. 74, § 1. The statute refers to "affection" in the singular; our decisional law refers to "affections."

[9]Damages in connection with such actions as criminal conversation and alienation of affection have "derisively been called 'heart balm.' " Prosser & Keeton, Torts § 124, at 929 (5th ed. 1984).

[10]See 706 & note 16, *infra.*

[11]In Blackstone's Commentaries, three invasions of a husband's right to the wife's conjugal fellowship, or consortium, were described: "abduction, or taking away a man's wife; adultery, or criminal conversation with her; and beating or otherwise abusing her." 3 Blackstone, Commentaries *139. Prosser and Keeton describe three types of interference: (1) enticement of the other spouse (which evolved out of "an early writ of 'ravishment' which listed the wife with the husband's chattels . . . [and] was ultimately recognized [to] . . . involve[] a loss of consortium"); (2) criminal conversation; and (3) alienation of affection. Prosser & Keeton, Torts § 124, at 917-919 (5th ed. 1984). The right to maintain such actions was eventually extended to married women. *Nolin* v. *Pearson,* 191 Mass. 283 (1906). *Bradstreet* v. *Wallace,* 254 Mass. 509, 511 (1926).

[12]" 'Criminal' because it was an ecclesiastical crime; 'conversation' in the sense of intercourse." Prosser & Keeton, Torts § 124, at 917 n.17 (5th ed. 1984).

the plaintiff could seek compensation for "humiliation, embarrassment, mental anguish and loss of consortium," Clark, Law of Domestic Relations, § 12.3, at 663. See, e.g., *Spade* v. *Lynn & Boston R.R.*, 168 Mass. 285, 290 (1897) (holding that mental distress resulting from negligence is not actionable, the court distinguishes its decision from "those classes of actions where an intention to cause mental distress . . . is shown or is reasonably to be inferred as, for example, in cases of seduction"); *Neville* v. *Gile*, 174 Mass. 305, 306 (1899) (allegation that plaintiff "suffered physically as well as mentally, and has been distressed in body and mind," stated "an aggravation of damages for the loss of *consortium*" [emphasis original]); Restatement (Second) of Torts § 685 comment g ("plaintiff is entitled to recover for emotional distress" in an action for criminal conversation).

Early decisions did not recognize alienation of affection as a substantive cause of action in Massachusetts. *Neville* v. *Gile*, 174 Mass. at 306 ("[i]n this Commonwealth, alienation of affections alone is not a substantive cause of action"). But see *Tasker* v. *Stanley*, 153 Mass. 148, 148 (1891) (in which "[t]wo actions of tort . . . for alienating the affections of the plaintiff's wife and enticing her to leave him" are considered). Decisions subsequent to *Neville* purporting to rely on the court's articulation of the law in that case did not, however, require dismissal of actions alleging alienation of affection if the claim was, in effect, for loss of consortium resulting from maliciously motivated enticement. See *Webber* v. *Benbow*, 211 Mass. 366, 368 (1912); *Cutter* v. *Cooper*, 234 Mass. 307, 316 (1920); *Gahagan* v. *Church*, 239 Mass. 558, 559 (1921).

Over time, the distinction between alienation of affection as an aggravation of damages and the variously described actions for loss of consortium (based either on enticement by improper motive or on debauchery) blurred and were ultimately reconstituted as a single tort, alienation of affection. The elements of this tort included aspects of the torts from which it was derived — debauchery or enticement by improper motive, resulting in loss of consortium and loss of affection. See, e.g., *Longe* v. *Saunders*, 246 Mass. 159, 160-161 (1923); *Bradstreet* v. *Wallace*, 254 Mass. 509, 511-512 (1926); *Sherry* v. *Moore*, 258 Mass. 420 (1927), *S.C.*, 265 Mass. 189 (1928); *Labrie* v. *Midwood*, 273 Mass. 578, 579 (1931); *Lizotte* v. *Warren*, 302 Mass. 217 (1939); *McCracken* v. *Cohen*, 322 Mass. 12, 12-13 (1947);

*White* v. *Thomson*, 324 Mass. 140, 142 (1949); *Pataskas* v. *Judeikis*, 327 Mass. 258, 259 (1951). As was the case with claims based on criminal conversation, recovery could also be had for mental or emotional distress in actions based on the alienation of a spouse's affection. See *Spade* v. *Lynn & Boston R.R.*, 168 Mass. at 290. See also Restatement (Second) of Torts § 683 comment m ("[i]n an action for alienation of affections, one spouse is entitled to recover damages for the loss of the other's affections and the emotional distress thus caused"). Cf. *White* v. *Thomson, supra* at 143 (denying injunctive relief in action based on alienation of affection, because "[e]quity cannot by injunction restrain conduct which merely injures a person's feelings and causes mental anguish" [citations omitted]).

By the mid-1950's, the common-law "heart balm" torts were generally expressed in only two causes of action,[13] the tandem torts of alienation of affection and criminal conversation. See, e.g., *Ross* v. *Nourse*, 330 Mass. 666 (1953); *Perry* v. *Carter*, 332 Mass. 508 (1955); *Nigrosh* v. *Daniels*, 349 Mass. 777 (1965); *Andrews* v. *Andrews*, 350 Mass. 781 (1966); *Saeli* v. *Mangino*, 353 Mass. 591 (1968). In *Doe* v. *Doe*, 378 Mass. 202, 203 (1979), "the continuing validity of the torts of alienation of affections and criminal conversation" by judicial determination was left to another day, which never dawned. The torts were abolished by statute six years later.

As provided in 1985 by G. L. c. 207, § 47B, a plaintiff may no longer recover, and "no action, suit or proceeding shall be maintained," for alienation of affection, or for criminal conversation.[14] The plaintiffs contend that their action is not one for alienation of affection or criminal conversation, but for

---

[13]*Whittet* v. *Hilton*, 335 Mass. 164 (1956), is an exception in that it appears to revive the early tort of enticement relying, however, on decisions that had already begun to view wrongful enticement and alienation of affection as elements of a single tort, alienation of affection.

[14]By 1984, "half the states ha[d] abolished or severely limited the action for alienation of affections or the action for criminal conversation or both." Prosser & Keeton, Torts § 124, at 930 (citing statutes abolishing such torts at n.93). Since 1984, Massachusetts and several other states have followed suit. See, e.g., *Padwa* v. *Hadley*, 127 N.M. 416, 421-422 (Ct. App. 1999) (citing cases). See also *Alexander* v. *Inman*, 825 S.W.2d 102, 105 (Tenn. Ct. App. 1991). The impetus for this, as suggested by Prosser and Keeton, may well have been that such actions are "peculiarly susceptible to abuse . . . . [I]t is notorious that they have afforded a fertile field for blackmail and extortion by means of manufactured suits in which the threat of publicity is used to force a settlement." Prosser & Keeton, Torts § 124, at 929. See *Diaz* v. *Eli Lilly &*

intentional infliction of emotional distress. We are not bound by the label they have ascribed to the facts alleged, *Lambley* v. *Kameny*, 43 Mass. App. Ct. 277, 280 (1997); *Sheehy* v. *Lipton Indus., Inc.*, 24 Mass. App. Ct. 188, 193 n.5 (1987), but look to the allegations themselves to determine the cause of action. If those allegations state a cause of action not specifically abolished by this statute, it may not be dismissed. It is well established that "an existing common law remedy is not to be taken away by a statute unless by direct enactment or necessary implication." *Ferriter* v. *Daniel O'Connell's Sons, Inc.*, 381 Mass. at 521, quoting from *King* v. *Viscoloid Co.*, 219 Mass. 420, 425 (1914). *Eyssi* v. *Lawrence*, 416 Mass. 194, 199-200 (1993). See *Pinnick* v. *Cleary*, 360 Mass. 1, 14-15 (1971); *Riley* v. *Davison Constr. Co.*, 381 Mass. 432 (1980); *O'Sullivan* v. *Shaw*, 431 Mass. 201, 206 (2000).

The plaintiffs argue that it is incidental that the vehicle used to cause them emotional distress was an adulterous affair, and note that they have made no claim for loss of consortium.[15] Loss of consortium was a significant, but not exclusive, element of the abolished torts. We do not agree that the allegations in the plaintiffs' complaint — that they suffered severe emotional harm as a result of Walsh's openly conducted affair with Bloomstein-Quinn and that this injury was intentionally inflicted — describe circumstances that meaningfully differentiate them from those previously compensable through claim of alienation of affection and criminal conversation. We have noted that intent was also an element of the torts no longer recognized (see, e.g., *Nolin* v. *Pearson*, 191 Mass. at 289), and the plaintiffs' claim cannot therefore be distinguished on this basis. We recognize that, although referred to as intentional torts, the label was "not always quite deserved, for a defendant charged with criminal

---

*Co.*, 364 Mass. 160 (1973) ("[a] consortium action resulting from physical injury of a spouse through negligence . . . carries no potentiality for blackmail such as notoriously attaches to the 'heart balm' actions of criminal conversation and alienation of affections").

[15]Not all claims based on loss of consortium, either of a spouse or parent, have been abolished by G. L. c. 207, § 47B. We recognize the right of a wife or a husband to recover damages for the loss of his or her spouse's consortium resulting from a third party's negligent injury. *Diaz* v. *Eli Lilly & Co.*, 364 Mass. at 167-168. See *Vassallo* v. *Baxter Healthcare Corp.*, 428 Mass. 1, 3 (1998). In addition, "a minor child has a strong interest in his parent's society." *Ferriter* v. *Daniel O'Connell's Sons, Inc.*, 381 Mass. at 510. *Angelini* v. *OMD Corp.*, 410 Mass. 653 (1991).

conversation or alienation of affections [could have been] liable although harboring no malicious design, being in truth the seduced rather than the seducer, and at least in the case of criminal conversation, unaware even that a marital relation existed." *Diaz* v. *Eli Lilly & Co.*, 364 Mass. at 159-160. However, as we discuss *infra*, the "intentional" component of the tort of intentional infliction of emotional distress may also be met by a showing that the defendant intended to commit the act without regard for the distress which was the likely result of his conduct. To conclude that there is a basis for recovery if Walsh engaged in the affair to cause distress, but not if Walsh did so without regard for the distress which might result would, we think, require a fact finder to make a distinction without a legally sufficient difference.

Further, damages based on emotional distress caused by a sexual affair were also available to a plaintiff claiming criminal conversation or alienation of affection. By abolishing these common-law torts, the Legislature has registered its intent to preclude recovery for emotional distress resulting from adultery. See, e.g., *Gasper* v. *Lighthouse, Inc.* 73 Md. App. 367, 372 (1987) ("[w]hat *is* precluded . . . is the refitting of the abolished actions into other forms. One cannot sue to recover for injuries arising from 'defilement of the marriage bed' or from an interference with the marriage by simply casting the defendant's conduct as . . . some other intentional tort" [emphasis original]); *Weicker* v. *Weicker*, 22 N.Y.2d 8 (1968); *Strock* v. *Presnell*, 38 Ohio St. 3d 207, 215-216 (1988), and cases cited (" 'the resurrection of these interests under a different name is fallacious and improper.' . . . [O]ther states that have abolished amatory actions agree that any attempt to recover for those actions under a different label is prohibited" [citations omitted]). Contrast *Van Meter* v. *Van Meter*, 328 N.W.2d 497 (Iowa 1983); *Speiss* v. *Johnson*, 89 Or. App. 289, aff'd, 307 Or. 242 (1988).

Based on our analysis of the abolished amatory torts, we conclude that the plaintiffs' allegations amount to nothing more than "heart balm" by another name. Because we do not intend by this decision to preclude all claims for intentional infliction of emotional distress solely because sexual misconduct in a marital context figures as part of the conduct complained of, and to address Michael's argument that his claim survives even if Quinn's is deemed abolished, we briefly review the evolution of this tort in Massachusetts.

(b) *Intentional infliction of emotional distress.* Out of the human condition may arise a myriad of emotional responses including anger, sadness, anxiety, and distress, many of which are attributable to the conduct of others. While perhaps blameworthy, such conduct is often not legally compensable. "It does not lie within the power of any judicial system to remedy all human wrongs." Prosser & Keeton, Torts § 4, at 23 (5th ed. 1984). The development of a cause of action in this Commonwealth for the intentional infliction of severe emotional distress is set forth in *Agis* v. *Howard Johnson Co.*, 371 Mass. 140 (1976). Prior to *Agis*, manifestations of bodily injury were a requisite element of such a claim.[16] Discussing the extension of the action both to situations in which emotional injury occurred recklessly, as well as without bodily harm, the court recognized concerns with problems of proof, and that "a wide door might 'be opened not only to fictitious claims but to litigation over trivialities.' " *Id.* at 143. While "not unconcerned," the court concluded "that 'the problems presented are not . . . insuperable' and that 'administrative difficulties do not justify the denial of relief for serious invasions of mental and emotional tranquility.' " *Ibid* (citation omitted). But the bar was set sufficiently high so that only substantial claims of emotional harm could overcome it. "To prevail on [a] claim [based on this tort], [a] plaintiff[] must establish '(1) that the defendant intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of his conduct, . . . (2) that the defendant's conduct was extreme and outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized community, (3) [that] the actions of the defendant were the cause of the plaintiff's distress, and (4) [that] the emotional distress suffered by the plaintiff was severe and of such a nature that no reasonable person could be expected to endure it.' Liability cannot be predicated on 'mere insults, indignities, threats, annoyances, petty oppressions or other trivialities' nor even is it enough 'that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation

---

[16]In *George* v. *Jordan Marsh Co.*, 359 Mass. 244, 255 (1971), the court first recognized that "one who . . . by extreme and outrageous conduct *intentionally* causes severe emotional distress to another, *with bodily harm resulting* from such distress, is subject to liability" (emphasis supplied).

which would entitle the plaintiff to punitive damages for another tort.' " *Tetrault* v. *Mahoney, Hawkes & Goldings*, 425 Mass. 456, 466 (1997) (citations omitted).

Although denominated an "intentional" tort, a review of decisions in which the cause of action has survived a motion to dismiss indicates that the majority of such actions are based, not on conduct engaged in for the purpose of causing distress, but on conduct that the actor should have known would result in distress.[17] That the plaintiffs have alleged that Walsh engaged in the affair in order to injure them does not distinguish this action from the amatory actions abolished by G. L. c. 207, § 47B. See discussion, *supra*. The plaintiffs' claim must fail, even if not abolished, because the conduct complained of was not outrageous.

An affair of the sort alleged here would by most in our society

---

[17]See, e.g., *Agis* v. *Howard Johnson Co.*, 371 Mass. 140 (1976) (complaint should not have been dismissed where it was alleged that the defendant, which employed the plaintiff as a waitress, held a meeting at which a supervisor stated that someone had been stealing and that he would begin firing all the waitresses, in alphabetical order, until the identity of that person could be established; he then summarily fired the plaintiff, as a result of which she sustained emotional distress); *Boyle* v. *Wenk*, 378 Mass. 592 (1979) (private investigator, seeking information about a neighbor, repeatedly contacted the plaintiff who had asked him not to call and informed him that she had recently been discharged from the hospital; the allegations of repeated harassment, in light of the plaintiff's known susceptibility to infliction of emotional distress, stated a claim); *Harrison* v. *Loyal Protective Life Ins. Co.*,,, 379 Mass. 212, 213-214, 219-220 (1979) (employer, aware that decedent had terminal cancer and was therefore unable to continue working for employer, threatened that if decedent filed for his physical disability benefits he would not be allowed to return to his job when he regained his health); *Brown* v. *Nutter, McClennen & Fish*, 45 Mass. App. Ct. 212, 213-214, 218-219 (1998) (a legal secretary, compelled and manipulated to notarize a forged document prepared by the attorney for whom she worked, on threats that he would commit suicide if she did not, suffered anxiety attacks; a cognizable claim for intentional infliction of emotional distress was stated). See also *Simon* v. *Solomon*, 385 Mass. 91, 95-98 (1982) (judgment properly entered on evidence that plaintiff suffered emotional distress as a result of the defendant landlord's failure to address repeated flooding, with water and sewage, of her basement apartment); *Bresnahan* v. *McAuliffe*, 47 Mass. App. Ct. 278, 283 (1999) (on summary judgment, plaintiff's submissions "showed a reasonable expectation of proving that the defendant's conduct was extreme and outrageous," where defendant funeral home, inter alia, gave erroneous information that an important religious ceremony could not be conducted for plaintiff's stillborn child, that an autopsy left the child's appearance mutilated and gruesome, and that the child's coffin was too small for his teddy bear).

be considered reprehensible and a cause for sadness, anger, and distress; we do not condone the behavior which is alleged to have occurred. But an openly conducted affair, even one which is intended to, or which the actor should have known would, cause emotional harm, does not in our society constitute conduct which is " 'extreme and outrageous,' . . . 'beyond all possible bounds of decency' and . . . 'utterly intolerable in a civilized community.' " *Agis* v. *Howard Johnson Co.*, 371 Mass. at 145, quoting from Restatement (Second) of Torts § 46 comment d (1965). In this respect, our holding is in line with the majority of State courts having decided similar issues. See *Strauss* v. *Cilek*, 418 N.W. 2d 378, 380 (Iowa Ct. App. 1987) ("defendant's conduct in participating in a [consensual] sexual relationship with . . . his friend's wife . . . over an extended period, is [not] atrocious"); *Whittington* v. *Whittington*, 766 S.W.2d 73, 74 (Ky. Ct. App. 1989) ("adultery can never reach the status of outrageous conduct"); *Ruprecht* v. *Ruprecht*, 252 N.J. Super. Ct. 230, 238 (1991) (allegations of adultery which occurred over an eleven-year period before discovered "fail[ed] to reach the level of outrageousness necessary"); *Padwa* v. *Hadley*, 127 N.M. at 419 (where defendant's sexual pursuit of plaintiff's wife, former wife and former fiancee, "was [defendant's] weapon of choice for attacking and hurting [plaintiff]," this was insufficient to establish liability); *Poston* v. *Poston*, 112 N.C. App. 849, 851 (1993) ("allegation of adultery does not evidence . . . extreme and outrageous conduct"); *Alexander* v. *Inman*, 825 S.W.2d 102, 105 (Tenn. Ct. App. 1992) (defendant's adulterous affair with plaintiff's wife and his perjury concerning these activities would not "in these days and times [be found by] an average member of the community . . . to be so atrocious that it goes beyond the bounds of decency").

This is not to say that there are no claims for intentional infliction of emotional distress which may be maintained because the conduct complained of involves sexual misconduct in a marital context. See *Lusby* v. *Lusby*, 283 Md. 334 (1978) (defendant husband raped wife and assisted two others in attempt to rape her); *Figueiredo-Torres* v. *Nickel*, 321 Md. App. 642 (1991) (claim stated against defendant psychiatrist who engaged in affair with his patient's wife); *Speiss* v. *Johnson*, 89 Or. App. 289 (claim stated against psychiatrist who treated husband's wife and engaged in sexual relationship with her); *Twyman* v. *Twyman*, 855 S.W.2d 619 (Tex. 1993) (emotional

distress claim allowed where husband demanded that wife, who had been raped prior to marriage, engage in sexual acts involving bondage activities). Contrast *Scamardo* v. *Dunaway*, 694 So. 2d 1041 (La. App. 1977) (no cause of action based on intentional infliction of emotional distress where defendant who engaged in affair with plaintiff's wife was medical doctor consulted for wife's infertility problems but remanded to allow amendment of the pleadings); *Strock* v. *Presnell*, 38 Ohio St. 3d at 214-216 (no claim based on intentional infliction of emotional distress where defendant minister engaged in affair with plaintiff's wife while acting as marriage counselor). See also *O'Connell* v. *Chasdi*, 400 Mass. 686, 689-691 (1987) (jury verdict for intentional infliction of emotional distress upheld; the defendant employer made repeated, unwanted sexual advances and threatened plaintiff's job if she continued to rebuff him). We do not decide today that conduct which in other States has been deemed sufficiently outrageous to state a cause of action would suffice to make out such a claim in Massachusetts; each case must be determined on the particular facts put before us. But those facts which the plaintiffs have alleged do not amount to conduct rising to the level of outrage necessary to support their claim, nor can such conduct reasonably be inferred. Thus Michael's claim must also fail, although we agree that it was not abolished by G. L. c. 207, § 47B, because the heart balm torts were maintainable only by a spouse.[18]

In sum, the complaint fails to state a cause of action entitling the plaintiffs to relief and properly was dismissed.

*Judgment affirmed.*

---

[18]*Nelson* v. *Richwagen*, 326 Mass. 485, 486-487 (1950). *Ronan* v. *Briggs*, 351 Mass. 700, 700 (1966) ("[n]o cause of action exists for the alienation of the affections of children"). Restatement (Second) of Torts § 702, at 510 (1977) (child "has no cause of action for the alienation of its parents['] affections").