Billings, Thomas P., J.
The original plaintiff, Jeremy Dahmer (“Jeremy”), commenced this action against his former psychotherapist .(Dr. Tara Satlow) and her practice group (General Psychological Associates, P.C., or “GPA”). The plaintiff in intervention, Stephanie D’Arcangelo Dahmer, is Jeremy’s former wife, and represents her own interests and those of the couple’s two minor children, Mariah and Lilliana. The defendants have both moved to dismiss Counts v. (Stephanie’s claim for negligence), VI (Stephanie’s claim for breach of contract), and VII (all three defendants’ claim for breach of third-party beneficiary contract) of the Complaint in Intervention pursuant to Mass.R.Civ.P. 12(b)(6).
For the reasons that follow, the motions are ALLOWED.
BACKGROUND
The Complaint in Intervention alleges the following facts which, for present purposes, are taken as true. In the spring of 2005, the Dahmers sought joint marital therapy with a licensed psychotherapist. To augment this therapy, the marital therapist advised each spouse to pursue individual therapy with separate psychotherapists. Pursuant to that recommendation, Jeremy began seeing Dr. Satlow for treatment. The goal of the individual therapy, which each spouse entered into independently, was to “provide additional support to the marriage counseling and strengthen the family relationship."
The Dahmers’ marriage eventually ended in divorce. Jeremy brought this action, alleging that Dr. Satlow:
(a) negligently and carelessly failed to treat, or improperly treated, the plaintiff, Jeremy, an individual who was suffering from material psychological problems; (b) failed to divulge in a reasonable manner to the plaintiff, Jeremy, sufficient information to enable him to give or withhold his consent to the course of treatment followed by the defendants; (c) failed to maintain proper boundaries between patient and therapist; (d) mishandled the transference and counter-transference phenomena which arose out of the patient-therapist relationship; (e) negligently conducted or handled the termination of the professional therapeutic relationship with the plaintiff, Jeremy, and/or failed to assist the plaintiff, Jeremy, in obtaining other professional treatment in accordance with accepted therapeutic procedure or practice; and (f) negligently undertook to treat the plaintiff, Jeremy, a patient who had psychological problems which were beyond defendant Satlow’s capacity to treat, and negligently failed to refer plaintiff, Jeremy, to another more competent professional person for proper treatment.
Jeremy also sued GPA, alleging that the organization failed:
(a) to supervise defendant Satlow properly; (b) to counsel defendant Satlow that her therapeutic treatment was inappropriate; (c) to warn plaintiff, Jeremy, that he was receiving inappropriate therapeutic treatment from defendant Satlow; and/or (d) to report defendant Satlow’s conduct to the appropriate licensing authorities.
In his complaint, Jeremy alleges that as a direct and proximate result of the defendants’ negligence, the joint marital counseling failed, his marriage and family relationship terminated, and the plaintiff and he suffered financial and emotional damages.
Stephanie, on behalf of herself and her two minor children, intervened in Jeremy’s action against Dr. Satlow and GPA. The complaint in intervention re *374 peated and realleged plaintiffs allegations against defendants, and added:
As a direct and proximate result of the defendants’ negligence, the marital counseling, in support of which the plaintiffs had sought individual psychotherapy, failed, the marriage and family relationships of the plaintiffs terminated with resulting financial and emotional damages to each of the plaintiffs, the costs and expenses reasonably incurred by the plaintiffs in pursuit of psychotherapy were lost, and all of the plaintiffs suffered severe and permanent damages.
The intervenors assert seven claims independent and distinct from those made by Jeremy: (I) loss of parental consortium: (II) loss of consortium; (III) intentional infliction of emotional distress; (IV) negligent infliction of emotional distress; (V) negligence; (VI) breach of contract; and (VII) breach of third-party beneficiary contract. Stephanie brings Count I on the children’s behalf, and Counts II, v. and VI individually; Counts III, IV, and VII are brought on behalf of all three plaintiffs. Only Counts V, VI and VII are the subject of the present motions.
DISCUSSION
1. Standard on a Motion to Dismiss
In considering a motion to dismiss under Mass.RCiv.P. 12(b)(6), the Court is to accept as true the factual allegations of the complaint, as well as any reasonable inferences that may be drawn from those allegations. Berkowitz v. President & Fellows of Harvard College, 58 Mass.App.Ct. 262, 270 (2003). The court should dismiss a complaint when the facts stated in the complaint do not add up to a sustainable cause of action that would entitle the plaintiff to relief. See, e.g., Harvard Law Sch. Coalition for Civil Rights v. President & Fellows of Harvard College, 413 Mass. 66, 68 (1992).
2. Count V: Stephanie’s Claim for Negligence
In CountV, Stephanie asserts a claim for negligence against Dr. Satlow and GPA. The claim fails for two reasons: Dr. Satlow cannot be held to a duty to her patient’s spouse which could potentially conflict with her duty to her patient; and the spouse may not re-cast in negligence a claim for the statutorily abolished tort of alienation of affections.
A. Conflicting Duties
In order to be liable in negligence, the defendant must owe the plaintiff a duty of care. Spinner v. Nutt, 417 Mass. 549, 552 (1994).
The concept of “duly”... “is not sacrosanct in itself, but is only an expression of the sum total of . . . considerations of policy which lead the law to say that the plaintiff is entitled to protection . . . No better general statement can be made than that the courts will find a duty where, in general, reasonable persons would recognize it and agree that it exists.”
Luoni v. Berube, 431 Mass. 729, 735 (2000), quoting W.L. Prosser & W.P. Keeton, Torts §53, at 358-359 (5th Ed. 1984).
Where the defendant is a professional, she owes a duly of care to her patient or client, and occasionally to a third party who may foreseeably be harmed by her negligence. Id. Any claim by a stranger to the professional relationship must be examined carefully, however, lest the Court impose on the defendant a duty that could potentially conflict with that owed her patient or client. Id.; see also Coombes v. Florio, 450 Mass. 182, 198 (2007) (Greaney, J., concurring) (applying Spinner analysis to non-patient’s claim against a physician; discussed more fully below).
In Spinner, beneficiaries of a trust brought a negligence action against counsel to the trustees. Said the SJC:
We have observed that an attorney is not “absolutely insulated from liability to nonclients.” “(A]n attorney owes a duty to nonclients who the attorney knows will rely on the services rendered.” We have cautioned, however, that, “ ‘where an attorney is also under an independent and potentially conflicting duty to a client,’ we are less likely to impose a duty to nonclients.”
“A trustee must exercise good faith and act solely in the interests of the beneficiaries in administering the trust [and] must lay aside self-interest... There can be no divided loyalty.” In the course of administering a trust, a trustee may be required to make difficult decisions with regard to his or her duties to the beneficiaries. A trustee’s attorney guides the trustee in this decision-making process. That the interests of the trustee and the interests of the beneficiaries may at times conflict cannot seriously be disputed. Should we decide that a trustee’s attorney owes a duty not only to the trustee but also to the trust beneficiaries, conflicting loyalties could impermissibly interfere with the attorney’s task of advising the trustee. This we refuse to do.
Id. at 552-53 (citations omitted). It is the potential for conflict — not necessarily an actual conflict — that prevents the imposition of a duty on attorneys to non-clients. See id. at 554; DaRoza v. Arter, 416 Mass. 337, 383-84 (1993); Robertson v. Gatson Snow & Ely Bartlett, 404 Mass. 515, 524 (1989); Page v. Frazier, 388 Mass. 55, 65 (1983).
This case, of course, involves the duties of a psychologist/therapist, rather than an attorney as in Spinner, DaRoza, Robertson, and Page. The professions bear some resemblances, however. Most notably, both are governed by professional codes of ethics which impose on the professional duties of confidentiality and of undivided loyalty to his or her client, subject to narrow and carefully crafted exceptions. See, with respect to psychologists, American Psychological Association, Ethical Principles of Psychologists and Code of Conduct, Ethical Standards (hereinafter, *375 “APA Ethical Standards”), adopted (for the most part) by 251 CMR 1.10 3.06 etseq. and 4.01 etseq.; G.L.c. 233,§20B.
In Coombes v. Florio, supra, the SJC has very recently considered a claim by a non-patient against a primary care physician. The plaintiff was the mother and administratrix of the estate of a child who died of injuries sustained when he was struck by an auto driven by a patient of the physician. She alleged that the defendant physician had prescribed the patient medications that cause drowsiness, dizziness, light-headedness, fainting, altered consciousness, and sedation; that he had failed to warn the patient of these side effects; and that this failure was a proximate cause of the accident.
This Court allowed the physician’s motion for summary judgment. An unusually divided SJC reversed, with three justices (Ireland, Spina and Cowin, JJ.) allowing the claim to go forward on general negligence principles; a fourth (Greaney, J.) concurring in the judgment; and two (Marshall and Cordy, JJ.) dissenting in separate opinions.[1] Both of the concurring opinions (Ireland and Greaney) were careful to state that no issue of divided loyalties was posed by the facts of the case:
The costs of imposing a duty owed to individuals other than a patient are limited because existing tort law already imposes on a doctor a duly to warn a patient of the adverse side effects of medications. The duty described here does not impose a heavy burden because it requires nothing from a doctor that is not already required by his duty to his patient.
450 Mass. at 191 (Ireland, J., concurring; citations omitted).
A physician should not, in ordinary circumstances, be held legally responsible for the safety of others on the highway, or elsewhere, based on medical treatment afforded a patient. To a physician, it is the patient (and not a third party with whom the physician has no direct contact) who must always come first.
It must be recognized, however, that... there exists a separate legal relationship between a physician and his or her patient. Based on that relationship, a physician is required to warn the patient of known potentially dangerous side effects of prescribed medication, including the possibility of experiencing drowsiness or loss of consciousness while under the medication’s influence. Cottam v. CVS Pharmacy, 436 Mass. 316, 321-22 (2002). In the usual case, so long as a physician provides his patient with an appropriate warning (cautioning the patient about the possible danger of driving), the applicable standard of care has been met, and a physician has no further duty. This is so because many medications may affect a patient’s ability to drive safely, and the physician’s legal duty is to give appropriate warnings to a patient, in a manner consistent with the warnings advised by the medication’s manufacturer and the physician’s personal knowledge of the patient’s over-all health condition, including the effects of additional medications being taken by the patient. Extending the scope of liability for the benefit of third parties foreseeably put at risk by an uninformed patient’s decision to drive alters neither the physician’s medical decision to prescribe medication, nor the physician’s legal duty under the Cottam decision to warn the patient about adverse side effects. Because the foreseeable risk of danger that the patient faces (here, death or bodily injury due to a motor vehicle accident) is the identical risk that the physician may anticipate others, such as the plaintiffs son, to encounter, there can arise no conflict of professional interest. Contrast Spinner v. Nutt, 417 Mass. 549, 553-54 (1994) (lawyer’s primary duty owed to client bars imposition of secondary duty owed to third parties). The imposition of liability for a failure to warn a patient rests on a physician’s superior knowledge of the risks (to the patient and to others) involved, and the physician’s professional responsibility to ensure that a patient understands the risks involved in taking prescribed medications.
Id. at 197-98 (Greaney, J., concurring in part and dissenting in part; footnotes omitted).
This case poses what the Coombes case, as the majority saw it, did not: a genuine, reasonably foreseeable possibility that the defendant psychologist, were the intervenor’s claim allowed to proceed, would find herself subject to conflicting duties, to her patient on the one hand and to his spouse and children on the other. It may well be, as the complaint in intervention alleges, that the stated agenda for Jeremy’s therapy with Satlow was to “provide additional support to the marriage counseling and strengthen the family relationship.” That should not, however, foreclose the therapist from the possibility that her patient’s needs and interests might be independent of, and perhaps even in conflict with, the goal of preserving the marriage. For example, if the relationship involved serious physical or psychological abuse (of which, I note, the record contains no evidence or allegation in this case), it seems at least conceivable that a responsible therapist would discuss with her patient the possibility of leaving the marriage.
At least one jurisdiction has, in considering a claim against a therapist by the patient’s spouse, examined the question of conflicting duties. In Homer v. Long, 90 Md.App. 1, 599 A.2d 1193 (1992), the Homers were married with two children. When Mrs. Homer began to suffer from severe depression, Mr. Homer retained a psychiatrist, Dr. Long, to provide his wife with appropriate counseling and psychiatric treatment. Dr. *376 Long, according to Mr. Homer, manipulated Mrs. Homer’s feelings negatively toward her husband and positively toward himself, isolated her from her family, hired her as his typist, and engaged in a sexual relationship with her.
Mrs. Homer eventually filed for divorce, whereupon Mr. Homer sued Dr. Long for negligence, negligent misrepresentation, fraud, and intentional infliction of emotional distress, alleging that he “suffered great mental anguish, reduction of income, impairment of his emotional and psychological health and well-being, financial expenses and losses,” and otherwise suffered severe injury and damages.
The Maryland Court of Special Appeals noted that “Mr. Homer was never Dr. Long’s patient, and so the normal duly that a doctor has to act in conformance with accepted standards of medical practice would not ordinarily flow to him.” 599 A.2d at 1197. In addition, the court noted, “the provision of individual psychotherapy to a married patient creates on its own a risk of conflict between the patient and his or her spouse.” Id.., citing R. Hafner, Marriage and Mental Illness, ch. 9, pp. 206-11.
Imposing a duty of care in such situations flowing from the therapist to the spouse can not only exacerbate that risk but create some very serious additional problems, not the least of which may be that of a divided loyalty on the part of the therapist and the prospect of breaches of confidence that can undermine the therapy and work to the patient’s disadvantage . . . “[W]e do not espouse [sic] the notion that a psychologist who, acting in the best interest of his or her patient and using proper professional standards, advises the patient to separate from his or her spouse may be liable for professional negligence.” We need not consider here whether, from a medical point of view, a therapist ought to give such advice directly; that is not our function. It is reasonable to suppose, however, that there will be situations in which such a separation (or some other course of action inimical to the interests of the patient’s spouse) is nonetheless therapeutically advisable from the patient’s point of view, and we cannot place the therapist in the position of being hesitant to make that recommendation or to refrain from dissuading the patient who, as a result of the therapy, makes that decision on his or her own, for fear of violating some duty owed to the spouse.
Id. at 1197-98 (citation omitted).[2]
It bears reiterating that in Homer, the plaintiff alleged a sexual relationship between psychotherapist and patient, conduct which the court noted at the veiy outset of its opinion is universally condemned in the profession. 599 A.2d at 1193-94; see APA Ethical Standards 10.05.[3] It was, in other words, the potential for conflicting duties that stood in the way of the claim of the non-patient spouse, rather than a claim that Dr. Long’s “therapy,” although offensive to the husband, might have been appropriate and helpful to his patient.
I am persuaded by the logic of the Homer case. I believe that the Massachusetts appellate courts will apply — Indeed, in Coombes, have already applied — to cases involving medical and mental health professionals the same sort of analysis as Spinner and other cases have applied to cases against attorneys; the professional can owe no duty of care to third parties, where such a duly would raise the potential of conflict with the professional’s paramount duly to the patient or client. That is this case. As a matter of law, therefore, the defendants had no legal duly of care extending to Stephanie in connection with her husband’s therapy, and Count v. therefore fails to state a claim upon which relief may be granted.
B. Abolition of the Amatoiy Torts
Stephanie’s negligence claim also fails for a second, independent reason. Massachusetts, like many (though not all) other jurisdictions, has abolished by statute the torts of alienation of affections and criminal conversation, known collectively as the “heart balm” or “amatoiy” torts. See Quinn v. Walsh, 49 Mass.App.Ct. 696, 701 (2000). At common law, “criminal conversation” referred to an extramarital sexual relationship between the defendant and the plaintiffs spouse; “alienation of affections,” to the defendant’s interference with the marital relationship that either included criminal conversation, or resulted in separation, or both. Id. at 701-03; McGrath v. Sullivan, 303 Mass. 327, 329 (1939); R. Bishop, Prima Facie Case, 17A Mass. Practice Series §1232 at 388 (1987). Damages were recoverable both for the aggrieved spouse’s loss of the other’s consortium, and also for emotional distress. Quinn, 49 Mass.App.Ct. at 701-03.
By G.L.c. 207, §47B the Legislature abolished both torts. The abolition extends, moreover, to any claim that is in substance one for alienation of affections or criminal conversation, even though bearing a different label. Quinn, 49 Mass.App.Ct. at 703-04 (affirming dismissal of claim, against man who had conducted an openly adulterous affair with plaintiffs wife, for intentional infliction of emotional distress).
In the present case, no criminal conversation is alleged. Stephanie’s claim does, however, fit the classic mold of a re-labeled claim for alienation of affections resulting in separation. This was a second reason given by the court for dismissing the complaint in Homer v. Long, where the court held that because the plaintiff husband was “really seeking recompense for the breakup of his marriage,” his claim was barred by Maryland's legislative and judicial abolition (respectively) of the torts of alienation of affections and criminal conversation.
This logic has similarly persuaded other jurisdictions which have abolished the amatoiy torts to dismiss spousal claims against psychotherapists who *377 were alleged to have had sexual contact with their patients. See Smith v. Pust, 19 Cal.App.4th 263, 23 Cal.Rptr.2d 364 (1993) (affirming allowance of summary judgment in husband’s medical malpractice claim against wife’s therapist with whom she had “a brief sexual encounter . . . which destroyed her marriage”); Harrington v. Pages, 440 So.2d 521 (Fla.App. 4th Dist. 1983) (similar, except claim was for intentional infliction of emotional distress); Nicholson v. Han, 12 Minn.App. 35, 162 N.W.2d 313 (1968) (similar; claims for breach of contract and medical malpractice). Cf. Spiess v. Johnson, 89 Or.App. 289, 748 P.2d 1020 (1988) (dismissing negligence claim but allowing claims for breach of contract and intentional infliction of emotional distress to proceed), and contrast Norton v. McFarlane, 818 P.2d 8 (Utah 1991) (allowing husband’s claim for alienation of affections— still recognized in Utah — to proceed against wife’s physician, but using the occasion to abolish common-law action for criminal conversation).
As is clear from paragraph 14 of the complaint in intervention (quoted at p. 3 supra), the intervenors seek damages for the financial and emotional costs of the breakup of the Daumer marriage and nuclear family. This means that Count v. is in substance a claim for the now abolished tort of alienation of affections, and is subject to dismissal on this ground as well as on the issue of duly.
3. Counts VI and VII: Stephanie’s Claim for Breach of Contract, and All Plaintiffs’ Claim for Breach of Third-Party Beneficiary Contract
Counts VI and VII, although sounding in contract rather than negligence, pose the same potential for conflicting duties as does the negligence claim asserted in Count V.
In Count VI, Stephanie alleges that because Jeremy’s individual therapy with Dr. Satlow was an outgrowth of marital counseling to which Stephanie was a party, her failure to use reasonable care in treating him was a breach of a contract with Stephanie. Even accepting the proposition that Stephanie had a contract with Dr. Satlow and GPA regarding Jeremy’s therapy, that would not alleviate, or warrant ignoring, the potential for conflicting duties. As the Maryland court noted in Homer, “a therapist’s professional duty must run to his or her patient and not to the patient’s spouse, even if, as [in Homer], the spouse is the one who initially employed the therapist and is paying the therapist’s fees." 599 A.2d at 1198.
All three plaintiffs in intervention additionally maintain, in Count VII, that they were intended third-parly beneficiaries of the contract between Jeremy and the defendants, in that the goal of the therapy was to provide additional support to the couple’s marital counseling and strengthen the family relationship.
In order to recover as a third-parly beneficiary, the plaintiffs must show that they were intended beneficiaries of the contract between the defendant and the trustees. A party is an intended beneficiary where “the circumstances indicate that the prom-isee intends to give the beneficiary the benefit of the promised performance.”
Spinner v. Nutt, 417 Mass. at 555. “In order to prevail under this theory the plaintiff must show that the [parties to the contract] intended to give [the plaintiff] the benefit of the promised performance ... The intent must be clear and definite.” Anderson v. FoxHill Village Homeowners Corp., 424 Mass. 365, 366-67 (1997). One who is only an “incidental beneficiary” may not recover. Id.
In this case, the contract between Jeremy and Dr. Satlow was for the provision of psychotherapy services. The primary beneficiaiy of the contract was necessarily the patient, Jeremy; there was not, and (for reasons discussed in connection with Counts v. and VI) could not be, a “clear and definite” purpose to benefit others. If the therapy had resulted in the reconciliation of the spouses and preservation of the family unit, Stephanie and the children would have incidental, but not intended, beneficiaries of the contract’s performance.
There can therefore be no recovery by the interve-nors under either a direct or a third-party beneficiary contract theory. Consequently, Counts VI and VII fail to state a claim upon which relief may be granted.
ORDER
For the foregoing reasons, defendant Satlow’s motion to dismiss is ALLOWED, and defendant GPA’s motion to dismiss is also ALLOWED. Counts V, VI and VII of the complaint in intervention are hereby dismissed.[4]

 note, as a matter of interest, that although Coombes was decided after briefing and oral argument on the motion before me, its holding was foreshadowed by two cases cited by the plaintiff-in-intervention herein, in her opposition to Dr. Satlow’s motion to dismiss. Arsenault v. McConarty, 2006 WL 2846962 (Super.Ct.; Agnes, J.) [21 Mass. L. Rptr. 500] (denying summary judgment to physician who negligently pre-scrtbed medication to patient resulting in patient losing consciousness while driving and colliding with plaintiff); Medina v. Pillemer, 2005 WL 3627226 (Super.Ct; Gants, J.) [20 Mass. L. Rptr. 352] (reaffirming addition of physician as party defendant where physician failed to warn patient with brain tumor not to drive, and patient subsequently lost consciousness while driving, injuring plaintiff). A third Superior Court case cited by the plaintiffs — Doe v. XYZ Services, 1995 WL 809493 (Super.Ct.; Lenk, J.) [3 Mass. L. Rptr. 585] (denying summary judgment to psychotherapists who failed to warn adoption agency of danger of placing plaintiff in same foster home as younger siblings when plaintiff was likely to abuse younger siblings) — mentioned (at n.3), but did not explore, the possibility of conflicting duties.

As the Homer court observed, there are limited circumstances in which a physician or psychotherapist may be subject to a duty to third persons that overrides the duty to the patient, “where the patient has, or is thought to have, a communicable disease or otherwise presents a clear danger *378 to a specific person.” 599 A.2d at 1197. In Massachusetts, see G.L.c. 112, §§129A, 135A, 135B; c. 233, §20B (recognizing narrow exceptions to patient-therapist evidentiary privileges). None of these circumstances is present in this case.

See also Palermo v. Brennan, 41 Mass.App.Ct. 503, 509 n. 10 (1996) (“The crucial factor in the therapist-patient relationship which leads to the imposition of legal liability for conduct which arguably is no more exploitative of a patient than sexual involvement of a lawyer with a client, a priest or minister with a parishioner, or a gynecologist with a patient is that lawyers, ministers and gynecologists do not offer a course of treatment and counseling predicated upon handling the transference phenomenon”) (citations omitted).

Some of what has been said herein may also have implications for Counts III and IV, for intentional and negligent infliction of emotional distress. See, e.g., Quinn v. Walsh, supra. The motion to dismiss, however, is addressed only to Counts V, VI and VII.