JEAN PALERMO vs. JOHN H. BRENNAN.

No. 94-P-1726.

Suffolk. January 10, 1996. - October 21, 1996.

Present: PERRETTA, JACOBS, & GREENBERG, JJ.

*Limitations, Statute of. Medical Malpractice,* Statute of limitations. *Psychotherapist. Negligence,* Psychiatrist.

In an action brought in 1992 against a psychiatrist by a former patient, al-
leging negligence, breach of fiduciary duty, reckless infliction of
emotional distress and violation of G. L. c. 93A, arising out of the
psychiatrist's having maintained a sexual relationship with the patient
during therapy between 1975 and 1979, the record presented on sum-
mary judgment did not establish as matter of law that the plaintiff knew
or should have known before 1989 that she was harmed by the
defendant's conduct; the matter was remanded for trial on, inter alia,
the issue of the statute of limitations. [507-510]

CIVIL ACTION commenced in the Superior Court Depart-
ment on February 18, 1992.

The case was heard by *Gordon L. Doerfer,* J., on a motion
for summary judgment.

*Pamela K. Sutherland* for the plaintiff.

*Thomas M. Elcock* (*Elizabeth M. Fahey* with him) for the
defendant.

JACOBS, J. In a complaint filed in the Superior Court in
1992, the plaintiff, a retired teacher, essentially alleges that
the defendant, a psychiatrist, mistreated her by maintaining a
sexual relationship with her between 1975 and 1979.[1] She
now appeals from a judgment dismissing her complaint which
was entered after a judge allowed the defendant's motion for

[1]The complaint alleges negligence, breach of fiduciary duty, reckless
infliction of emotional distress and violation of § 9 of G. L. c. 93A, the
Consumer Protection Act. The defendant, in his answer, denied that his
conduct was negligent or that any of the alleged sexual contact occurred.

summary judgment based upon the running of the relevant statutes of limitations.[2]

Viewed in the light most favorable to the plaintiff, *Riley* v. *Presnell*, 409 Mass. 239, 240-241 (1991), the materials available to the judge pursuant to Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974), indicate the following facts: Suffering from a "bad marriage" and "very depressed," the plaintiff in 1971 sought treatment from the defendant who earlier had treated her sister. Shortly after his second appointment with her, the defendant hospitalized the plaintiff "for serious depression." The plaintiff continued to be treated by the defendant for depression between 1971 and 1973, during which period she saw him approximately every week to ten days for individual therapy, was hospitalized by him on two other occasions, received twenty-nine electric shock treatments, and grew increasingly dependent upon him.

During two therapy sessions in 1973, the defendant held and rubbed the plaintiff's hands while they were in her lap. At the next therapy session, the defendant stated that he felt differently toward her than he did his other patients and that he, therefore, could no longer treat her. Thinking that the defendant had not treated her sister in this way, the plaintiff thought that he viewed her as "special" and different from his other patients. When the plaintiff, in March of 1974, attempted to schedule an appointment, the defendant refused, stating he still felt the same way toward her. At the end of 1974, the defendant, in response to a further request for an appointment, told the plaintiff that he no longer had a problem with treating her and scheduled a therapy session during the first week of January, 1975. During that appointment, the defendant touched the plaintiff's breasts and other parts of her body in a sexual way. At an office appointment approximately a week and one-half later, the parties had sexual intercourse and consumed cocktails prepared by the defendant, following which the defendant discussed the plaintiff's life and problems with her and prescribed medica-

---

[2]The statute of limitations applicable to each of the plaintiff's tort claims is three years after the cause of action accrues, G. L. c. 260, § 2A; that applicable to the G. L. c. 93A claim is four years, G. L. c. 260, § 5A. The tort claims, therefore, are barred unless they accrued on or after February 18, 1989, and the c. 93A claim is barred unless it accrued on or after February 18, 1988.

tions for her. The session ended, as had the previous session, with the defendant scheduling the plaintiff's next appointment. He also returned to the plaintiff the fifty-dollar payment she had made for her previous session and told her he could not take her money. No money passed between them thereafter. This pattern of cocktails, sex and therapy was repeated approximately every two weeks until the end of June, 1975, with the sessions lasting approximately two hours. Thereafter, the sessions were conducted at a Ramada Inn until September of 1975, at which time the plaintiff told the defendant that she did not want to see him again. In February of 1976, the plaintiff "in a crisis" called the defendant for help. He suggested meeting at the Ramada Inn and the parties resumed their former pattern of conduct. Shortly thereafter, the plaintiff began to suffer severe anxiety attacks whenever she attempted to write her name in a public setting, prompting the defendant to suggest that she see John O'Brien, a behavioral psychologist who worked with him. Beginning in August, 1976, until September, 1979, the plaintiff was treated by O'Brien who consulted with the defendant with respect to the latter's continuing prescription of medications for her. The plaintiff stopped meeting with the defendant in March, 1977, only to resume the prior pattern of conduct in September, 1978, when the defendant told her that he had separated from his wife. On approximately fourteen occasions, they had sexual relations at his apartment. Once they had sex in a hotel after the defendant made sexual advances during an automobile ride. On occasion, the parties went out for dinner before or after these sessions. The plaintiff finally stopped seeing the defendant in February of 1979, when he indicated he was returning to his wife. The defendant continued to prescribe and monitor medications for the plaintiff until October of 1979.

The plaintiff viewed her sexual activity with the defendant as "an affair," separate from the therapy aspect of their sessions. She thought of the defendant as "like a 'god'" and that she "must be just very special if this tremendously great person has wished to have sex with [her]." At the same time, she felt guilty because she had been raised to believe that it

was improper to have sex outside of marriage.[3] Accordingly, she spoke little of her personal relationship with the defendant other than to refer to it as "an affair" when describing it to her best friend in 1975 and thereafter to her sisters and a subsequent therapist.

In an affidavit signed on June 29, 1992,[4] the plaintiff stated that in the course of her treatment by the defendant she "grew increasingly dependent upon Dr. Brennan and developed a very strong transference[5] toward him," and that she "did not realize that Dr. Brennan's treatment had been bad or had caused me harm until approximately 1989 when articles began appearing in the local newspapers regarding therapist-patient sexual misconduct."[6] The affidavit of Susan Shapiro, a psychotherapist who has treated the plaintiff since May of 1985, states that the plaintiff "did not recognize that she had been sexually abused by the defendant, and indeed, given her psychological conditions, she could not have been expected to discover that his treatment was deficient or that it caused her harm until approximately March or April 1989, when she began to read articles appearing in local newspapers regarding therapist-patient sexual misconduct."

The record indicates the plaintiff suffered from chronic depression and anxiety of varying intensity throughout the time of her treatment by the defendant. In her affidavit, Sha-

---

[3]The plaintiff was first married in 1960. She was divorced in June of 1979. A second marriage ended with the death of her husband in the early 1980s.

[4]This affidavit, apparently filed in connection with a 1992 tribunal hearing pursuant to G. L. c. 231, § 60B, was marked as an exhibit at the request of defendant's counsel during the 1993 deposition of the plaintiff and is part of our record. The judge, perhaps unaware of this affidavit, discounted an almost identical affidavit dated after the deposition on the grounds that it could not be used to contradict statements by the affiant "*previously* made under oath" (emphasis supplied), citing *O'Brien* v. *Analog Devices, Inc.*, 34 Mass. App. Ct. 905, 906 (1993).

[5]"Transference is the term used by psychiatrists and psychologists to denote a patient's emotional reaction to a therapist and is 'generally applied to the projection of feelings, thoughts and wishes onto the analyst, who has come to represent some person from the patient's past.' " *Simmons* v. *United States*, 805 F.2d 1363, 1364 (9th Cir. 1986) (quoting from Steadman's Medical Dictionary 1473 [5th Lawyer's Ed. 1982]).

[6]The plaintiff also testified in a deposition that it was not until she participated in a group with other abuse victims in 1990 that she "began to see the damages and the harm" that the defendant's conduct had caused her.

piro states that the plaintiff "has suffered a number of signifi-
cant complex and chronic psychological disorders" as a result
of the defendant's mistreatment of her including "feelings of
guilt, pain, loss and rage, depression, paranoia and anxiety,
worthlessness, low self-esteem, flashbacks to defendant's treat-
ment, difficulty developing other relationships with men or
women, a profound inability to trust psychotherapists, and
anger at authority figures generally, particularly men."

In *Riley* v. *Presnell*, 409 Mass. at 240, the Supreme Judicial
Court determined that "the so-called 'discovery rule' affects
the accrual of a malpractice action against a psychotherapist"
and held that a statute of limitations does not begin to run in
such an action "until the plaintiff knew or reasonably should
have known that [she] may have suffered injury because of
the psychotherapist's conduct." The defendant, tracking the
approach adopted by the judge,[7] argues that the record
indicates that the plaintiff knew long before February, 1988
(see note 2, *supra*), that the harm claimed by her was caused
by the defendant and that she, therefore, was barred from
bringing this action. This approach principally relies on two
factual constructs to conclude that the plaintiff failed, as mat-
ter of law, to sustain her burden of proving facts that take
this action outside of the applicable statutes of limitations.
See *Riley* v. *Presnell, supra* at 243-244. The first is that the
psychological distress of which the plaintiff now complains is
similar to the anxiety suffered by her while she was being
treated by the defendant, and the second is that the plaintiff
has been aware, since at least as early as 1979, that the defen-
dant was the cause of that anxiety. There is no dispute that
the first is correct, at least in part.[8] The second derives from a
selective reliance upon five of the statements made by the
plaintiff in the course of approximately ten hours of deposi-
tion testimony. In one answer, she stated that "since 1975,
when the sex started, I lived a total nightmare of embarrass-
ment of my hands shaking in public whenever I would sign
my name. When it would happen to me I would live in a sui-

[7]We recognize that the judge's decision is not dispositive and in no way
limits our review of the record. We refer to it, however, because it reflects a
thorough screening of the record that essentially culls all material bearing
on the defendant's argument and the issue of the plaintiff's knowledge.

[8]Some of the damages alleged by the plaintiff derive from psychological
problems that followed her claimed discovery in 1989 that the defendant's
conduct had been unethical and abusive.

cidal depression for three days." She also stated that the end
of her "affair" with the defendant contributed to her anxiety
and that the secrecy of her "relationship" with him was some-
how related to her feeling "a distance from people." She also
indicated that one meeting with the defendant at which he
ejaculated into his clothing while kissing and touching her
was very "traumatizing" and "disturbing" to her. The only
direct allusion by the plaintiff to her pre-1988 state of mind
with respect to the defendant's therapeutic treatment of her
was made in the course of several convoluted responses to the
question, "Did anyone at any time tell you that Doctor Bren-
nan's treatment of you from 1971 to 1974 was wrong?" in
which the plaintiff stated "I always felt that [the therapy
provided by the defendant] was awful . . . ."[9] Building on
these isolated responses and the principle that a plaintiff need
not understand the full extent or nature of her injury in order
to be bound, for action accrual purposes, by her knowledge
that a defendant's conduct was somehow harmful to her, see
*Olsen* v. *Bell Tel. Labs., Inc.,* 388 Mass. 171 (1983), the judge
concluded that the plaintiff's action accrued at least as early
as 1979. The defendant further argues that the plaintiff's
reading of the newspaper articles in 1989 merely alerted her
to her legal rights and is of no significance. See *Zampell* v.
*Consolidated Freightways Corp.,* 15 Mass. App. Ct. 954
(1983).

   Militating against the allowance of the summary judgment
motion on the ground that the plaintiff knew, before 1988,
that the defendant had caused her injury are the plaintiff's af-
fidavit, dated prior to her deposition (see note 4, *supra*), in
which she states that she was unaware that the defendant's
treatment had caused her harm until 1989, and her deposi-
tion testimony to the same effect. The deposition excerpts
relied upon by the defendant, at most, comprise conflicting
evidentiary admissions that do not make the plaintiff's knowl-
edge "altogether plain," compare *O'Brien* v. *Analog Devices,
Inc.,* 34 Mass. App. Ct. 905, 906 (1993), and, absent a clear
election between versions, merely create a factual conflict that
must be resolved by the jury. *Anthony's Pier Four, Inc.* v.

[9]Even treating this statement as binding for summary judgment purposes
and not the detritus of a long, disjointed and contentious deposition, this
assessment of inappropriate therapy never was directly linked to any harm
suffered by the plaintiff.

*Crandall Dry Dock Engrs. Inc.*, 396 Mass. 818, 827 (1986). The issue is not the binding effect of these excerpts but rather their inconclusive nature. Compare Liacos, Massachusetts Evidence § 2.11, at 58-59 (6th ed. 1994). To give dispositive weight to such isolated and vague evidence in deciding a motion for summary judgment is to engage in inappropriate fact finding. *Attorney Gen.* v. *Bailey*, 386 Mass. 367, 370, cert. denied, 459 U.S. 970 (1982).

This is not a case where the plaintiff's admissions established, as matter of law, that "modicum of knowledge required to trigger the statute of limitations." *Phinney* v. *Morgan*, 39 Mass. App. Ct. 202, 209 (1995). Instead, they suggest that while the plaintiff may have known, before 1988, that she suffered harm as a result of what she perceived to be an affair with the defendant, it is by no means clear that she believed she had been harmed by the defendant's psychotherapeutic treatment. This is a distinction that may be peculiar to the unique qualities of the therapist-patient relationship[10] and the possibility that the therapist's sexual misconduct "cause[s] an injury which by its very nature prevents the discovery of its cause." *Riley* v. *Presnell*, 409 Mass. at 246. See *Simmons* v. *United States*, 805 F.2d 1363, 1367 (9th Cir. 1986) (In applying a similar discovery rule the court rejected the therapist's argument that the patient's cause of action accrued upon her acquisition of the knowledge that her love affair with the married therapist was emotionally damaging and noted that such a linkage "misses the point of the complaint of negligence by a mental health professional"). Underscoring this distinction in this action is the affidavit opinion submitted by Shapiro that, "given her psychological conditions, she could not have been expected to discover that his treatment was deficient or that it caused her harm until approximately March or April, 1989 . . . ." This opinion, read in the context of the other materials before the judge, also forecloses summary judgment based upon imputed knowledge. See *Riley*

---

[10]"The crucial factor in the therapist-patient relationship which leads to the imposition of legal liability for conduct which arguably is no more exploitative of a patient than sexual involvement of a lawyer with a client, a priest or minister with a parishioner, or a gynecologist with a patient is that lawyers, ministers and gynecologists do not offer a course of treatment and counseling predicated upon handling the transference phenomenon. See A. Stone, M.D., Law, Psychiatry, and Morality 199 (1984)." *Simmons* v. *United States*, 805 F.2d 1363, 1366 (9th Cir. 1986).

v. *Presnell,* 409 Mass. at 246 ("Accrual of the cause of action occurs when the ordinary reasonable person who had been subject to the experience would have discovered that the injury was caused by that experience"). We conclude that this action falls well within the further holding of *Riley* v. *Presnell,* at 240, that "the question when a plaintiff knew or should have known of [her] cause of action is one of fact which in most instances will be decided by the trier of fact." Accordingly, we reverse the judgment of the Superior Court and remand this case for a trial which shall include, if then contested, the issue of the statute of limitations.[11]

*So ordered.*

---

[11]Not argued to us is the issue of the applicability, in the circumstances, of G. L. c. 93A, § 9(1), prior to its amendment by St. 1979, c. 406, § 1, raised by the defendant as an alternate request in his motion for summary judgment. We, therefore, do not pass upon this issue. Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).