Graham, J.
This case arises out of a sexual relationship between the plaintiff Susan H. Korper (“Korper”), and her physician, defendant Mark E. Weinstein (‘Weinstein”). Korper alleges that her sexual relationship with Weinstein constitutes negligence (Count I), deceit (Count II), breach of a fiduciary duty (Count III), outrage (Count IV), and unfair or deceptive acts or practices under G.L.c. 93A (Count V).[2] Korper now moves for partial summary judgment as to Count III. Weinstein cross-moves for summary judgment on Count III and has moved for summary judgment on all other counts.
BACKGROUND
Weinstein was an M.D. and chief of surgery at Harvard University Health Services. Korper and Weinstein met on October 14,1994, when Korper was referred to Weinstein as a result of the discovery of suspicious calcifications in her right breast. In 1988, Korper, a forty-two-year-old woman at the time, had undergone a breast biopsy for calcifications in her right breast.
On October 27, 1994, Weinstein performed a second breast biopsy on Korper in the same area as the 1988 biopsy. The biopsy was negative. On November 4, 1994, Korper had a follow-up appointment with Weinstein to have the stitches removed from the biopsy. On that day, the incision was still open and draining and Weinstein did not remove the stitches. Rather, Weinstein withdrew fluid from the underlying hematoma and bandaged the wound. In mid-November, Korper returned to Weinstein to have the stitches finally removed. At this appointment, the wound was still partially open and draining. Therefore, Weinstein secured the edges of the open wound with steri-strips and applied a bandage after removing the stitches.
Korper continued to see Weinstein and during these visits Weinstein and Korper discussed Korper’s Ph.D. research in the area of conflict resolution. Weinstein suggested to Korper that they meet and discuss a project *729 that she was currently working on since Weinstein and his wife had experienced a conflict with the Dover Public School system, and he believed that their experience would apparently assist Korper in her research.
On December 3, 1994, Korper and Weinstein met for lunch. Following lunch, Weinstein went to Korper’s house where they engaged in sexual intercourse. This sexual relationship continued for over two years. Korper also states that on one occasion during sexual intercourse, Weinstein removed the almost three-week-old bandage and steri-strips which covered Korper’s more than five-week-old incision. Korper contends that this caused her scar to heal in a worse way than it otherwise would have.
Weinstein stopped treating Korper at the Harvard University Health Services Office after their sexual relationship began. As their relationship grew, they exchanged gifts, shared meals, and Weinstein gave Korper over $41,000 to assist her with living expenses. In 1996, their relationship began to deteriorate. By the end of 1996, Korper expressed the need for Weinstein to go to therapy. Weinstein refused to attend therapy sessions, however, he did attend a joint therapy session with Korper. In 1997, Weinstein told Korper that he did not want to see her anymore, however, he would instruct his wife to continue Korper’s maintenance after his death.
Korper insisted that she and Weinstein enter into a written contract that she had drafted in which, Weinstein agreed to give Korper money for her maintenance, pay her therapy bills, and amend his will to provide for her after his death. The contract also states that Weinstein could not report their relationship to the Board of Registration of Medicine and he could not tell his wife about his relationship with Korper, since Korper did not want to be involved in any marital disputes between Weinstein and his wife. On July 7, 1997, Weinstein died without having amended his will, as set forth in the contract. Korper now seeks to recover from Weinstein’s estate.
DISCUSSION
Negligence/Medical Malpractice
To prevail on a claim of negligence, Korper must show that 1) there was a duty or standard of care owed to her by Weinstein; 2) Weinstein’s conduct constituted a breach of such duty or violation of such standard of care; 3) Weinstein’s conduct was the proximate cause of her harm; and 4) she suffered actual harm. See Armstrong v. Lamy, 938 F.Sup. 1018, 1048 (D.Mass. 1996).
Massachusetts does not recognize a duly between a patient and a surgeon to refrain from consensual sexual intercourse. See Palermo v. Brennan, 41 Mass.App.Ct. 503, 509 n.10 (1996). In Palermo, the Appeals Court distinguished the duty that arises in a therapist-patient relationship from the duty in other professional relationships.[3]
It is the presence of transference that is the determining factor in these types of cases.[4] In Roe v. Federal Ins. Co., 412 Mass. 43 (1992), plaintiff brought suit against her dentist asserting claims of malpractice, breach of contract, assault and battery, G.L.c. 93A, as well as other common law causes of action. Plaintiffs complaint alleged that the dentist had sexually assaulted and molested her during office visits for treatment. The Supreme Judicial Court distinguished this case from cases involving transference that occur in the area of psychiatric care. The SJC held that “there is nothing inherent in the typical relationship between patient and dentist that makes the patient unusually susceptible to accept the sexual advances of the dentist.” Id. at 50-51. Therefore, sexual misconduct by a dentist was not covered under the dentist’s malpractice insurance.
Similarly, here, Korper sought treatment from Weinstein as a surgeon and not as a psychiatrist. As in Roe, there is no presence of the transference phenomenon. Korper cannot maintain a cause of action for negligence/medical malpractice unless there is some evidence of transference. In addition, defendant’s counsel points to case law in other jurisdictions that is persuasive and on point. Based on the summary judgment record, the sexual relationship between Korper and Weinstein did not involve transference. Defendant’s motion for summary judgment as to Count I is ALLOWED.[5]
Breach of Fiduciary Duty
The analysis under the claim of breach of fiduciary duty by Weinstein is similar to the analysis above under the claim of negligence. While the SJC has held that a physician owes a fiduciary duty towards a patient, the Court has not held that a consensual sexual relationship between a physician and a patient gives rise to a breach of that duty. See Alberts v. Devine, 395 Mass. 59, 69 (1985); see also Palermo, 41 Mass.App.Ct. at 509 n.10 (holding that no cause of action is recognized against a physician by a patient involved in a sexual relationship with the physician unless a therapist-patient relationship is present).
Other jurisdictions have also held that unless the non-psychiatrist physician insists on sexual intercourse as vital and necessary to treatment, a consensual sexual relationship does not give rise to a breach of the fiduciary duty. See Mindt v. Winchester, 948 P.2d 334, 335-36 (1997). In Mindt, plaintiff sought the help of a physician because plaintiff suffered from azoospermia, which is the absence of sperm in the seminal fluid. While seeking treatment, plaintiffs wife began a social relationship with her husband’s physician which then evolved into an extramarital affair. The Oregon Court of Appeals held that the physician’s sexual relationship with plaintiffs wife was not a part of his medical treatment and therefore was not actionable. It is clear, therefore that a cause of action can only be maintained if the physician prescribed sexual intercourse as part of the patient’s treatment. While there is no Massachusetts authority directly on point in this case, this Court finds the reasoning of the Oregon Court of Appeals extremely persuasive and hereby adopts their reasoning in this case
*730 Since there are no allegations suggesting that Weinstein forced Korper into sexual intercourse based on any treatment value arising from such intercourse, Korper cannot maintain a cause of action for breach of fiduciary duty based on a purely consensual sexual relationship. As such, Korper’s motion for summary judgment as to Count III is DENIED and Weinstein’s motion for summary judgment as to Count III is ALLOWED.
Claim for Tort of Outrage[6]
In order to prevail on a claim for the tort of intentional infliction of emotional distress, Korper must show that Weinstein 1) intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; 2) the conduct was “extreme and outrageous,” was “beyond all possible bounds of decency” and was “utterly intolerable in a civilized community”; 3) Weinstein’s actions caused Korper’s distress; 4) the emotional distress Korper sustained was “severe” and of a nature “that no reasonable man could be expected to endure it." See Agis v. Howard Johnson Co., 371 Mass. 140, 144-45 (1976).
The Appeals Court has recently addressed this tort in the context of extramarital affairs. In Quinn v. Walsh, 49 Mass.App.Ct. 696, 697 (2000), plaintiff sought to recover damages from his spouse’s lover on a claim of intentional infliction of emotional distress. The Appeals Court held that
an affair of the sort alleged here would by most in our society be considered reprehensible and a cause for sadness, anger, and distress; we do not condone the behavior which is alleged to have occurred. But an openly conducted affair, even one which is intended to, or which the actor should have known would, cause emotional harm, does not in our society constitute conduct which is “extreme and outrageous,” “beyond all possible bounds of decency,” and “utterly intolerable in a civilized community.” Id. at 707-08.
As such, it is clear that Massachusetts does not recognize claims for intentional infliction of emotional distress in the circumstance alleged. Defendant’s motion for summary judgment is ALLOWED.[7]
G.L.c. 93A
In order to prevail under G.L.c. 93A, Korper must demonstrate that the consensual sexual relationship with Weinstein took place in the context of “trade or commerce.” See Lantner v. Carson, 374 Mass. 606, 607-08. General Laws Chapter 93A does not apply to private transactions that are not completed in the ordinary course of “trade or commerce.” See id. at 608. Further, in cases of consensual sexual relationships, a cause of action under G.L.c. 93A cannot be maintained. See Kantrovitz v. Academy of Physical and Social Development Corp., 370 Mass. 858 (1976); see also Palermo v. Brennan, Superior Court C.A. No. 92-1083 (1997) (White, J.).
“General Laws Chapter 93A should [not] be so used as to translate what is in essence a harm to the marital relationship into a consumer harm.” See Kantrovitz, 370 Mass. at 859 (1976). In Kantrovitz, the plaintiff brought suit against the family therapist who was engaged in an extramarital affair with his spouse. The Appeals Court held that sexual relationships of this nature are purely private and do not constitute a cause of action under G.L.c. 93A.
“In order to make out a viable c. 93A claim, plaintiff must assert and prove that the conduct complained of is related to or arises out of the business component, as opposed to the personal component, of the interaction.” Palermo v. Brennan, Superior Court C.A. No. 92-1083 (1997) (White, J.). In this case, Korper fails to prove that her relationship with Weinstein arose out of the business component with him. The uncontradicted record shows that all of the sexual intercourse took place outside of Weinstein’s office. This affair was clearly personal and involved no business aspects. Defendant’s motion for summary judgment on Count V is ALLOWED.
ORDER
For the foregoing reasons, defendant’s motion for summary judgment is ALLOWED as to Counts I, III, IV, and V. Plaintiffs motion for partial summary judgment as to Count III is DENIED.

At the summary judgment hearing, Korper withdrew her claim of deceit and as such that claim will not be discussed.

The Appeals Court held that,
The crucial factor in the therapist-patient relationship which leads to the imposition of legal liability for conduct which arguably is no more exploitative of a patient than sexual involvement of a lawyer with a client, a priest or minister with a parishioner, or a gynecologist with a patient is that lawyers, ministers and gynecologists do not offer a course of treatment and counseling predicated upon handling the transference phenomenon. Id. at 509 n. 10 (citations omitted).

Transference is the term used by psychiatrists and psychologists to denote a patient’s emotional reaction to a therapist and is ‘generally applied to the projection of feelings, thoughts and wishes onto the analyst, who has come to represent some person from the patient's past.’ "Id. at 509 n. 5, citing Simmons v. United States, 805 F.2d 1363, 1364 (9th Cir. 1986) (quoting from Steadman’s Medical Dictionary 1473 [5th Lawyer's Ed. 1982)).

Although plaintiff entitles her claim as an action for medical malpractice, this Court finds the record void of any inference of an impropriety on the part of Weinstein while Korper was in his care. Therefore, Count I is dismissed in its entirety.

While Korper labels this claim as a Claim for Tort of Outrage, she has pled the elements of the tort of intentional infliction of emotional distress and the defendant refers to this claim as such. This Court will therefore address this claim as a claim for intentional infliction of emotional distress.

Since defendant’s motion for summary judgment is allowed based on the above reasoning, this Court need not address the issue of whether Korper’s claim for intentional infliction of emotional distress survives Weinstein’s death.