**TOWN OF STURBRIDGE, Plaintiff,**

v.

**MOBIL CORPORATION, Atlantic Richfield Company and Shell Oil Products Company, Defendants.**

**No. CIV.A. 01–40019–NMG.**

United States District Court, D. Massachusetts.

March 29, 2002.

Jonathan M. Silverstein, Mark R. Reich, Kopelman & Paige, Boston, MA, for plaintiff.

Deborah E. Barnard, Ralph T. Lepore, III, Bradley L. Croft, Holland & Knight LLP, Stephen J. Brake, David L. Ferrera, Nutter, McClennen & Fish, LLP, Boston, MA, Michael P. Murphy, Regnante, Sterio & Osborne, Wakefield, MA, for defendants.

## MEMORANDUM AND ORDER

GORTON, District Judge.

This case arises from the contamination of the water of Well No. 1 ("the Well") in the Town of Sturbridge, Massachusetts ("the Town"), by the contaminant, Methyl Tertiary Butyl Ether ("MTBE"). It has been determined that the contaminant leaked into the soil from two nearby gasoline filling stations.

One of the stations is located at 365 Main Street in Sturbridge ("the Mobil site") and is owned and operated by Defendant Mobil Corporation ("Mobil"). The other station is located at 400 Main Street in Sturbridge ("the ARCO/Shell site"). Defendant Atlantic Richfield Company ("ARCO") held a leasehold interest on the property at 400 Main Street from the early 1970's until 1985 and subleased the property to a number of tenants who, one after the other, operated the gasoline station. In 1985, ARCO conveyed its leasehold interest to Defendant Shell Oil Products Company ("Shell").

Defendant Shell reported that, in November, 1984, three underground storage tanks at the ARCO/Shell site failed tightness tests and were leaking contaminants. ARCO began response actions to curtail the threat of release of hazardous materials into the environment. In 1989, Shell assumed responsibility for those response actions. The ARCO/Shell site is "upgradient of" (drains toward) and within 700 feet of the Well.

Defendant Mobil reported that, prior to July, 1990, oil and hazardous materials were found in the groundwater and soil at the Mobil site. In January, 1991, the Mobil site was designated as a "priority disposal site" by the Massachusetts Department of Environmental Protection ("DEP"). The Mobil Site is upgradient of and within 1,100 feet of the Well.

In 1985, the DEP assigned the Well an "emergency status" requiring Sturbridge to cease using the Well because of the release and threat of release of oil and hazardous materials from the underground storage tanks at the Mobil and ARCO/Shell sites. Because of the emergency status, the Well was taken "off line" and the Town was allowed to use it only in case of fire or if the other two Town wells became unusable.

On January 8, 1991, the Town sent a letter to ARCO stating:

As you know, Sturbridge Town Well # 1 has been out of service since 1987 due to the threat of contamination from the former ARCO station (now Shell) on Route 20. Due to increasing water demands in the Town and the exclusive use of the remaining 2 wells for the past 3 + years, we are now faced with a potentially dangerous situation should a fire create a large demand and/or should one of the remaining wells go out of service for any reason. The Town, therefore, requests that action be taken immediately to restore Well # 1 to service or develop a new well.

It is our understanding that Shell Oil Company has assumed some responsibility in this matter and is currently funding further study at the site. Part of this study is pumping Well # 1 to determine whether or not any contaminants will be drawn into the Well, however, the test cannot be completed until the Well is cleaned (inactivity has caused

clogging) to increase capacity from the current 30 GPM +/− to the rated capacity of 410 GPM +/−. Shell has indicated to us that they are not responsible for the cleaning of the well, therefore, we are looking to ARCO to assume responsibility for the work (estimated to cost approximately $10,000) and to make provisions for the development of a new well should it prove to be necessary.

We trust that the documentation provided adequately demonstrates that the well has clogged due to the inactivity caused by the forced shutdown to avoid contamination of the municipal water supply. Pursuant to this, we ask that ARCO proceed with the cleaning of the well and, if found to be necessary, the planning for the development of a new well. If this work does not commence within 30 days, the town will be forced to take legal action.

The contaminant MBTE was, and continues to be, detected in the water in the Well. Historically, MBTE levels in the Well ranged from 10 to 12 parts per billion ("ppb") of MBTE. On May 10, 1993, it was discovered that the Well contained 79.7 ppb of MBTE. That unusually high level of MBTE did not, however, render the Well unusable or unsafe. At a meeting held on June 8, 1993, the DEP and the Town noted that the demand for water in the Town had increased dramatically. They outlined possible options for meeting the Town's short-term and long-term water needs, including investigating possible leaks, installing a new well, increasing production from Well #3, rehabilitating Well #2, conducting wellhead treatment and installing an air sparging curtain between the Mobil Station and the Well.[1]

On July 10, 1996, the DEP issued a Water Management Permit to the Town authorizing the withdrawal of water from all of the Town's wells, including the Well, effective July 10, 1996 and expiring on August 31, 2013. On that same day, the DEP noted that until the Well was operational, the Town would likely continue to suffer water shortages.

On December 17, 1997, Attorney Peter Feuerbach from the law firm of Kopelman & Paige sent a demand letter to Mobil, Shell and ARCO notifying them that:

> the Town has suffered property damage, both real and personal, in the form of diminution in value of its land due to the release and threat of release of oil and hazardous materials at and from the Shell/ARCO site and the Mobil site and the subsequent loss of use and damage to Well. No. 1.

In October, 1998, the Town discovered that rehabilitation of the Well would not be feasible and that it would have to obtain a new water supply and develop a new well to meet its increasing water demand.

The Town's water supply consultant has recommended a treatment system that will cost $100,000 for the first year of operation plus $50,000 for each subsequent year. The consultant has also recommended investigating the possible development of a new water system at an estimated cost of $150,000.

On December 12, 2000, the Town brought suit against Mobil, Shell and ARCO in Worcester Superior Court alleging property damage pursuant to M.G.L. c. 40 § 39G and the Massachusetts Oil and Hazardous Material Release Prevention and Response Act, M.G.L. c. 21E § 5, nuisance and negligence. It sought reim-

---

1. An air sparging curtain would provide a barrier between the Well and the contami- nants present at the Mobil site.

bursement for costs incurred as a result of the contamination under M.G.L. c. 21E §§ 4 and 11A, damages, injunctive relief, fees and costs. The case was removed to this Court on February 9, 2001 based on diversity jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441(a) and (b).

Defendant Shell brought cross-claims against ARCO for contribution and contractual indemnity and against Mobil for contribution. Defendant Mobil asserted cross-claims against Shell for contribution under M.G.L. c. 231B and 21E § 4. Finally, ARCO brought cross-claims against Shell for breach of contract, declaratory judgment pursuant to M.G.L. c. 231A and two counts for contribution pursuant to M.G.L. c. 231B and 21E § 4, respectively.

Pending before this Court are motions of ARCO and Shell for partial summary judgment and motions of the Town for deferral of summary judgment pending discovery. Defendants Shell and ARCO seek summary judgment on all counts except Count I (which seeks reimbursement under M.G.L. c. 21E §§ 4 and 11A), on the ground that the claims are time-barred.

## I. *Analysis*

Defendants Shell and ARCO argue that Counts II through V are time-barred because they were brought after the expiration of the three-year limitations period provided for in M.G.L. c. 21E § 11(A)(4) and M.G.L. c. 260 § 2A. Defendant ARCO claims that the cause of action accrued, at the latest, in January, 1991 when the Town sent ARCO the letter complaining about its inability to use the Well due to the threat of contamination. Defendant Shell claims that the cause of action accrued in November, 1990 when the Town sent Shell a letter stating that the Well was taken out of service due to the threat of contamination. At the very latest, Shell contends, the action accrued in June, 1993 when the

DEP sent the Town a letter in which the DEP stated that the level of MBTE in the Well had increased to 79.7 ppb.

The Town claims that the action did not accrue until the Town discovered, in October, 1998, that the rehabilitation of the Well was not feasible and that it would have to obtain a new source of water. The Town further contends that its actions prior to 1998 were "response actions" taken to aid in the assessment and containment of contamination at the two sites of leakage.

### A.  M.G.L. c. 21E § 5.

Chapter 21E contains the following statute of limitations for claims of property damage under Section 5:

> Actions by persons other than the Commonwealth to recover for damage to real or personal property shall be commenced within three years after the date that the person seeking recovery first suffers the damage or within three years after the date that the person seeking recovery of such damage discovers or reasonably should have discovered that the person against whom the action is being brought is a person liable pursuant to this chapter for the release or threat of release that caused the damage, whichever is later.

M.G.L. c. 21E § 11A (4).

The statute of limitations applicable to Chapter 21E claims is consistent with the "discovery rule" applied in negligence cases. It provides that a cause of action accrues when the plaintiff discovered or reasonably should have discovered the damage and the cause of the damage. *Taygeta Corporation v. Varian Associates, Inc.*, 436 Mass. 217, 226, 763 N.E.2d 1053, 1060–61 (2002); *One Wheeler Road Assocs. v. The Foxboro Co.*, 843 F.Supp. 792, 798 (D.Mass.1994).

The facts of *Taygeta*, a very recent case decided by the Massachusetts Supreme Judicial Court ("SJC"), are closely analogous to the facts of the case at hand. In *Taygeta*, the plaintiff/owner of real property in Beverly, Massachusetts brought suit in Massachusetts Superior Court against the former owner of adjacent real property. 763 N.E.2d at 1056. In 1985, defendant removed an underground storage tank and found that it had leaked waste into the soil. *Id.* at 1056. The DEP determined that a release of hazardous materials had occurred and directed the defendant to assess the extent of the contamination. In January 1987, the DEP placed the defendant's property on the list of confirmed disposal sites and in May, 1992, the defendant began operating a treatment system to remove the hazardous materials. *Id.* at 1056–57.

In or about May, 1992, plaintiff contacted consultants about contamination at the site in connection with its plans to refinance the property. *Id.* at 1057. On May 18, 1993, the consultant drilled monitoring wells on the site and collected soil samples. One month later, the consultant transmitted the analysis of the samples to the plaintiff. The data indicated elevated levels of contaminants in the groundwater below the site and the flow of groundwater toward the plaintiff's property.

In September, 1996, the plaintiff filed a complaint alleging property damage pursuant to Chapter 21E § 5, negligence and nuisance. *Id.* at 1057. The parties agreed that, for purposes of the statute of limitations, the complaint was filed on May 24, 1996. The Superior Court entered summary judgment in favor of the defendant on the grounds that the plaintiff's complaint was time-barred because the action accrued on March 3, 1993 (the date on which the plaintiff knew or should have known the property was contaminated). *Id.* at 1057–58.

The plaintiff appealed directly to the SJC which allowed its application for direct appellate review. It argued that 1) its cause of action did not accrue until it had knowledge of its actual harm and the likely cause, and 2) because groundwater contamination is not an observable condition, it had no evidence of such contamination until June 10, 1993 when it received the sampling results. *Id.* at 1058–59. The SJC held that a plaintiff does not have an affirmative duty to investigate whether its own property has been damaged by contaminants leaked from the property of another but that once the results of an assessment of the property:

> provides definitive information that hazardous material has migrated from its original site and contaminated other properties, and the owners of such other properties receive actual knowledge of their own contamination, ... they will have discovered their damages as well as the cause thereof. At that point, the statute of limitations begins to run.

*Id.* at 1061–62.

■ Under this new rule set forth by the SJC in *Taygeta*, the plaintiff's claim for property damage under M.G.L. c. 21E § 5 is time-barred. In opposition to defendants' motion for summary judgment, the plaintiff submitted a letter dated June 22, 1993 from the DEP to the Town Water Department stating that the level of MBTE in the Well was unusually high. The letter states:

> Analytical results from a sample collected from Well # 1 on May 10, 1993 reveal that the water contained 79.7 μg/l of methyl tertiary butyl ether (MBTE). Sturbridge has received verbal analytical results for a sample collected from Well # 1 on May 26, 1993 which indicate a lower MBTE concentration. Past lev-

els of MBTE in Well # 1 have historically been between 10 and 20 µg/l.

The letter reveals that the Town knew in June, 1993 that the Well contained unusually high levels of hazardous materials and was thus contaminated. It had known for years that MBTE had leaked into the soil and groundwater from defendants' gasoline storage tanks located in close proximity to the Well and was, therefore, also aware of the cause of its contamination at that time. Because the plaintiff did not file the instant action until December 12, 2000, its claim for property damage under M.G.L. c. 21E § 5 is time-barred.

### B. Plaintiff's Remaining Tort Claims

■ The plaintiff's claims for negligence, nuisance and willful contamination of its water in violation of M.G.L. c. 40 § 39G are also subject to a three-year statute of limitations pursuant to M.G.L. c. 260 § 2A ("[A]ctions of tort...shall be commenced only within three years next after the cause of action accrues").[2] A tort claim accrues on the date of the plaintiff's injury. *Riley v. Presnell*, 409 Mass. 239, 243, 565 N.E.2d 780 (1991) (negligence actions generally accrue when the plaintiff is injured); *Murphy v. Town of Chatham*, 41 Mass.App.Ct. 821, 824, 676 N.E.2d 473 (1996) (cause of action for nuisance accrues on date of damage).

■ Because in many cases an injury is "inherently unknowable," courts developed the discovery rule to toll the statute of limitations until the plaintiff knows or reasonably should have known that it has been harmed by the defendant's conduct. *Taygeta*, at 1062–63; *Church v. General*

*Electric Company*, No. 95–30139, 1997 WL 129381, *4, 1997 U.S. Dist. LEXIS 3297, *12 (Mass.) (discovery rule is frequently invoked in cases involving environmental pollution); *Riley*, 409 Mass. at 243, 565 N.E.2d 780. In most cases, the question of when a plaintiff knew or should have known of its injury is an issue to be determined by the trier of fact. *Taygeta*, at 1063; *Riley*, 409 Mass. at 251, 565 N.E.2d 780 (because there was a genuine dispute as to when plaintiff knew or should have known that he may have been harmed by the defendant's negligence, summary judgment should not have been allowed); *Palermo v. Brennan*, 41 Mass.App.Ct. 503, 509, 672 N.E.2d 540 (1996).

■ In the instant case, the plaintiff has submitted evidence sufficient to raise a genuine issue of material fact with respect to when it knew or reasonably should have known that it suffered harm as a result of the defendants' conduct. Contrary to ARCO's assertions, the Town's January 8, 1991 letter did not establish that plaintiff was aware of its harm as of that date.

The letter stated that the Well was vulnerable to a "threat of contamination from the former ARCO station," and that the Town was "faced with a potentially dangerous situation." The Town wrote the letter in order to request that ARCO clean the Well so that it could be tested for contaminants. The correspondence implies that the Town was seeking to prevent potential harm to its property. Earlier correspondence from the Town and the DEP to the defendants indicate that the plaintiff sought to enlist the defendants' assistance in preventing, curtailing and

---

2. M.G.L. c. 49 § 39G provides, in pertinent part:
   Whoever willfully or wantonly corrupts, pollutes or diverts any of the waters...or injures any structure, work or other property owned, held or used by a town...shall forfeit and pay to said town three times the amount of damages assessed therefor, to be recovered in an action of tort.

mitigating the threat of damage to the Town's water supply.

The plaintiff has submitted evidence indicating that the Well was not placed on emergency status due to the presence of contaminants in the Well. Rather, the evidence suggests that the use of the Well was restricted as a precautionary measure to avoid interference with remediation at the ARCO site and to prevent the capturing of contaminants from the ARCO site in the "cone of influence" of the Well and the Town's other wells.[3]

The documents submitted by the parties show that the Town and the DEP anticipated that the Well would eventually be brought back on line as a viable source of the Town's water. Although it was determined that the Well contained an unusually high level of MBTE in 1993, that determination did not render the Well unusable or unsafe. In fact, the DEP issued a water withdrawal permit to the Town three years later which authorized the withdrawal of water from the Well until the year 2013.

Moreover, as in *Taygeta*, the defendant in this case represented to the plaintiff that the hazardous materials on its property posed no risk of damage to the plaintiff. *See id.* at 1063. In a letter dated August 11, 1994, Shell represented to the Town that it had completed a risk assessment of its property and concluded that the chemicals there "posed no significant risk of harm to health, safety, public welfare and the environment."

Defendant ARCO likens this case to those in which plaintiffs' tort claims were barred because they waited to file their claims until the full extent of their harm was realized. *See Olsen v. Bell Telephone Laboratories*, 388 Mass. 171, 445 N.E.2d

609 (1983). In *Olsen*, the plaintiff sued the defendant alleging that he had contracted asthma from exposure to a hazardous substance in the course of his employment by the defendant due to the defendant's negligence and breach of implied warranty. *Id.* at 172, 445 N.E.2d 609. In April, 1973, a physician diagnosed the plaintiff with asthma and determined that it had been caused by a substance at the plaintiff's workplace. *Id.* at 173, 445 N.E.2d 609. More than four years later, the plaintiff learned that his asthma was permanent and brought suit against the defendant.

The SJC affirmed summary judgment entered against the plaintiff on the grounds that his action was time-barred. *Id.* at 176, 445 N.E.2d 609. Because the discoverable harm was appreciable when the plaintiff was diagnosed with asthma in 1973, the plaintiff's action brought seven years later was time-barred. The Court rejected the plaintiff's argument that the cause of action accrued on the date he discovered his injury was permanent stating that to allow a cause of action for negligence to accrue only when the permanency of the injury is discovered would "create an unacceptable balance between affording plaintiffs a remedy and providing defendants the repose that is essential to stability in human affairs." *Id.* at 175, 445 N.E.2d 609.

The instant case is distinguishable. The plaintiff in *Olsen* was aware of his injury seven years before he brought his action. In the case at bar, the Town has produced evidence sufficient to raise a factual issue of whether it was aware of the harm and its injury was not appreciable until it was determined that the Well was contaminated to such an extent that it was no longer an acceptable source of water.

The evidence submitted herein raises a genuine issue of material fact with respect

---

**3.** Neither party defines "cone of influence," but it appears to be the area within which the well is affected by materials in the soil and groundwater.

to whether the Town knew or reasonably should have known that it had been harmed by the defendants' conduct within the period required by the statute of limitations.

### C. Plaintiff's Motion for Deferral of Summary Judgment

Plaintiff seeks to defer consideration of the motion for summary judgment pursuant to Fed.R.Civ.P. 56(f) in order to conduct additional discovery in the event the Court determines that the Town has failed to demonstrate a genuine issue of material fact precluding the defendants' motions for partial summary judgment. Because the Court concludes that the Town has demonstrated that there are genuine factual issues related to its negligence, nuisance and M.G.L. c. 40 § 39G claims, the motion is moot with respect to those claims.

■ Under Fed.R.Civ.P. 56(f), a court may postpone summary judgment if it appears that the non-moving party cannot present facts essential to justify its opposition. Fed.R.Civ.P. 56(f). The purpose of the rule is to provide a "procedural escape hatch" to a party genuinely in need of additional time "to marshal facts essential to justify its opposition" to a motion for summary judgment. *Paterson–Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985, 988 (1st Cir.1988). A party seeking deferral must 1) make a timely proffer, 2) show good cause for the failure to discover the essential facts sooner, 3) present a plausible basis for its belief that facts exist that would likely raise a genuine and material issue, and 4) show that the facts are discoverable within a reasonable amount of time. *Morrissey v. Boston Five Cents Savings Bank, et al.*, 54 F.3d 27, 35 (1st Cir.1995).

With respect to the Town's claim for property damage under M.G.L. c. 21E § 5,

it has failed to offer a plausible basis for its belief that facts exist which would raise a genuine and material issue as to when it became aware of the contamination of the Well. *See Paterson–Leitch*, 840 F.2d at 989 (denial of Rule 56(f) proper where facts sought, if obtained, would not help defeat motion for summary judgment). The evidence submitted by the Town demonstrates unequivocally that it was aware of the contamination as of June 10, 1993.

### ORDER

For the reasons set forth in the Memorandum above:

1) the motions of defendants ARCO and Shell for partial summary judgment (Docket Nos. 16 and 31, respectively) are, with respect to Count II, ALLOWED and, otherwise, DENIED;

2) the motions of the plaintiff Town of Sturbridge for deferral of summary judgment (Docket Nos. 23 and 36) are DENIED.

So ordered.