Hinkle, Margaret R., J.
This case arises out of a divorce settlement agreement entered into between the plaintiff Kristina Ward and her former husband. In connection with the administration of the settlement agreement, the plaintiff filed a complaint against the defendants, Jay Goldfarb (“Goldfarb”), Kathleen Trachy (“Trachy”), and Fortis Management Group, LLC (“Fortis”) (collectively “defendants”), alleging claims for negligent and intentional infliction of emotional distress. The matter is before the court on the defendants’ motion to dismiss or, in the alternative, for summary judgment. For the following reasons, the motion is allowed.

BACKGROUND

The summary judgment record reveals the following undisputed facts.[2] In 2002, the plaintiff entered into a post-divorce settlement agreement with her former husband, Frank J. Ward. Pursuant to this agreement, Frank J. Ward’s father, Frank M. Ward (“Ward”), through an affiliated company, Seaview Associates, LLC, agreed to assume his son’s support obligations to the plaintiff and their two children. The settlement agreement also provided that funds from Seaview would be used to purchase a $750,000 annuity product sold by defendant ING North America Insurance Group through defendant First National Corporation,[3] as well as pay $3,500 per month for the support of the plaintiff and Frank J. Ward’s children. Ward and Seaview retained Fortis, a personal financial management firm, to manage various financial matters, including financial data compilation and bill payment services.
Goldfarb is the founder and manager of Fortis. Trachy was an employee of Fortis during the relevant time period, providing various financial services to Fortis clients, including Ward. Ward, Seaview and Fortis signed an engagement letter describing the services Fortis would provide. According to Goldfarb, when bills and other financial obligations became due, Fortis would contact Ward, usually by telephone, and request authorization to process the corresponding payments through Ward’s various bank accounts. Fortis could not make any payments on behalf of Ward or Seaview without express authorization from Ward. The services Fortis provided Ward and Seaview included overseeing and monitoring monthly child support payments to the plaintiff from a Seaview account pursuant to the settlement agreement.
In December 2006, Ward requested that Goldfarb provide him with information regarding an annuity in the plaintiffs name funded by Seaview. Specifically, Ward sought to discover the amount withdrawn from the annuity and its current value. Fortis obtained this information and in turn conveyed it to Ward.[4] In a January 2007 telephone conversation, Ward requested that Goldfarb compose a letter to the plaintiff. Ward informed Goldfarb of what he wanted the letter to say. Goldfarb drafted the letter and read it to Ward over the phone. Ward instructed Goldfarb to sign the letter and send it to the plaintiff on his (Ward’s) behalf, and Goldfarb complied.[5] Subsequently, the plaintiff received the letter and as a result, asserts that she suffered severe emotional distress and accompanying physical ailments.

*13
DISCUSSION

Under the established standard, summary judgment will be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Kourovacilis v. General Motors Corp., 410 Mass. 710, 716 (1991); Mass.R.Civ.P. 56(c). The party moving for summary judgment bears the burden of affirmatively demonstrating that there is no triable issue of fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by demonstrating that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. Kourovacilis, 410 Mass. at 716. Once the moving party “establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact.” Pederson, 404 Mass. at 17. In deciding a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party, but does not weigh evidence, assess credibility or find facts. Attorney Gen. v. Bailey, 386 Mass. 367, 370-71 (1982).
According to the plaintiff, the basis for her negligent and intentional infliction of emotional distress claims is that the defendants improperly obtained her financial information and subsequently drafted and sent the letter regarding this information. The defendants assert that, as a matter of law, neither Goldfarb, Trachy nor Fortis owed the plaintiff a legal duly, and as such, summary judgment must enter in their favor on the plaintiff s claims for negligent infliction of emotional distress. In addition, the defendants assert that they are entitled to summary judgment on the plaintiffs claims for intentional infliction of emotional distress because, as a matter of law, the defendants’ conduct was not extreme and outrageous, as is required to succeed on a claim for intentional infliction of emotional distress.

Negligent Infliction of Emotional Distress

A claim for negligent infliction of emotional distress requires that the plaintiff demonstrate (i) negligence, (ii) emotional distress, (iii) causation and (iv) that a reasonable person would have suffered emotional distress under similar circumstances. Payton v. Abbott Labs, 386 Mass. 540, 557 (1982). In addition, as with any negligence claim, the plaintiff must establish that the defendants owed her a legal duty. Yakubowicz v. Paramount Pictures Corp., 404 Mass. 624, 629 (1989). Whether a defendant owes a duty to the plaintiff is a question of law to be resolved by the court where there are no genuine issues of material fact. Cottam v. CVS Pharmacy, 436 Mass. 316, 320 (2002). The court may consider existing social policy, values and customs in its evaluation. Yakubowitz, 404 Mass. at 629.
Where the defendant is a professional, she owes a duty of care to her client and occasionally to a third parly who may foreseeably be harmed by her negligence. Luoni v. Berube, 431 Mass. 729, 735 (2000). A claim by a “stranger to the relationship must be examined carefully, however, lest the Court impose on the defendant a duty that could potentially conflict with that owed her patient or client.” Dahmer v. Satlow, 2007 WL 4510212 at *3 (Mass.Super. 2007) (Billings, J.) [23 Mass. L. Rptr. 373], citing Luoni, 431 Mass. at 735. In Spinner v. Nutt, the SJC examined whether an attorney owed a legal duly to a non-client who was a beneficiary of a trust of which the defendant attorney acted as trustee. 417 Mass. 549, 551-54 (1994). In its discussion, the SJC reasoned that a legal duly to a non-client should not be imposed on a defendant if there is any potential that such a duty would conflict with an existing duty to a client. Id. at 554. Notably, it is the potential for a conflict, not the existence of an actual conflict, that prevents the imposition of a duty owed by an attorney to a non-client. Id.
As a matter of law, I conclude that neither Fortis, Goldfarb nor Trachy owed any legal duty to the plaintiff. Ward retained Fortis, Goldfarb and Trachy to handle his and Seaview’s financial matters. As evidenced by the engagement letter, the defendants were responsible for managing and overseeing Ward and Seaview’s financial matters, including Ward and Seaview’s obligations arising out of the settlement agreement with the plaintiff. To impose a duty upon Fortis, Goldfarb and Trachy to the plaintiff would create the potential for a conflict. Because I conclude, as a matter of law, that neither Fortis, Goldfarb nor Trachy owed any legal duty to the plaintiff, the plaintiffs claims for negligent infliction of emotional distress fails, and the defendants are entitled to summary judgment.

Intentional Infliction of Emotional Distress

In order to succeed on a claim for intentional infliction of emotional distress, plaintiff must prove that (i) the defendant intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of his conduct, (ii) the defendant’s conduct was extreme and outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized community, (iii) the actions of the defendant were the cause of the plaintiffs distress, and (iv) the emotional distress suffered by the plaintiff was severe and of such a nature that no reasonable person could be expected to endure it. Agis v. Howard Johnson Co., 371 Mass. 140, 145 (1976). With regard to the element of extreme and outrageous conduct, the SJC has said:
[Outrageous conduct] cannot be predicated upon “mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities,” nor even is *14 it enough “that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by ‘malice,’ or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort;” rather, “[liability has been found only where the conduct has been so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.” Massachusetts cases have similarly described the limitations upon what can constitute “extreme and outrageous” conduct.
Foley v. Polaroid Corp., 400 Mass. 82, 99 (1987), quoting Restatement (Second) of Torts, §46, cmt. d (1965); see also Beecy v. Puccirelli, 387 Mass. 589, 596 (1982) (conduct in question might be reprehensible, but could not be characterized as extreme and outrageous); Richey v. American Auto. Ass’n, Inc., 380 Mass. 835, 839 (1980) (no finding of outrageousness warranted even if defendant employer’s decision to terminate hypersensitive employee could legitimately be characterized as bad, unjust, and unkind).
As noted, the basis for the plaintiffs claim for intentional infliction of emotional distress is that the defendants improperly obtained information regarding her personal finances and withdrawals and subsequently drafted and forwarded the letter regarding those withdrawals. According to the plaintiff, the receipt and review of this letter caused her severe emotional distress and accompanying physical ailments. As a matter of law, I find that none of the conduct alleged by the plaintiff rises to the level of “extreme and outrageous, beyond all possible bounds of decency, nor utterly intolerable in civilized society.” Ziemba v. Fo’cs’le, Inc., 19 Mass.App.Ct. 484, 489 (1985). Accordingly, defendants Fortis, Trachy, and Goldfarb are entitled to summary judgment on the plaintiffs claims for intentional infliction of emotional distress.

ORDER

For the foregoing reasons, the motion for summary judgment of defendants Fortis Management Group, LLC, Kathleen Trachy, and Jay Goldfarb is ALLOWED.

 The defendants have moved to dismiss, or in the alternative, for summary judgment. The parties have not submitted a Rule 9A(b)(5) statement of facts in connection with the summary judgment motion. As such, the court gleans the undisputed material facts from the materials submitted in connection with the motion.

 The annuity contract lists the plaintiff as the owner.

 The plaintiff has submitted a letter from defendant First National Corporation to Trachy, stating, in pertinent part:
Per your request I am sending a policy summary on Kristina Ward’s ING annuity, which details the chronological withdrawal activity since 12/03. What’s noteworthy are the (7) withdrawals in 2006 totaling $285,875.
I have requested a duplicate contract, which ING will be mailing to me today or tomorrow. I expect to have it by early next week, and I’ll send it over to you as soon as I receive it.
In her affidavit, the plaintiff asserts that she never provided Trachy or anyone at Fortis authority to obtain this private information regarding her personal expenditures,

 The letter reads, in pertinent part:
Dear Ms. Ward:
At the request of Mr. Frank M. Ward, we are notifying you that he will no longer fund your checking account via wire on a monthly basis.
It has come to Mr. Ward’s attention that funds have not been utilized as previously agreed upon, which was for the benefit of [plaintiff and Frank J. Ward’s children] only, not for your partner’s benefit. He will pay half of all household expenses for the two boys, and you and your partner can pay your share. As such, please forward all receipts and/or invoices with respect to household expenses (e.g., food, clothing, etc.) directly incurred for [plaintiff and Frank J. Ward’s children] to our office as follows.
Mr. Ward will review each of these expense and funds will be authorized and disbursed accordingly. If expenses incurred do not reach $3,500 in a given month, the unused balance will be held for the benefit of [plaintiff and Frank J. Ward’s children).
In addition, it has also come to Mr. Ward’s attention that you interfered with a dramatic investment that is not available today and would have doubled from its original investment value of its 10 [sic] year term. This investment would have had the result Mr. Ward intended, which was to generate $90,000 per year for life for the three of you. Since the boys were minors, the investment was placed in your name and Mr. Ward entrusted you to protect each of the 1/3 interests for his grandsons ... Witness to this was the selling agent of this product.
Mr. Ward will demand, if need be through the court system, a full accounting of the use of funds you drew down. In fact, Mr. Ward has interpreted these withdrawals as theft of his grandsons’ money.